United States District Court
Southern District of Texas
**ENTERED**
May 06, 2024
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| LAW OFFICES OF HILDA L. SIBRIAN, P.C., *and* HILDA L. SIBRIAN, | § § § § | |
| Plaintiffs, | § § | CIVIL ACTION NO. H-23-4643 |
| v. | § § | |
| MCNEIL CONSULTANTS, LLC, QUINTESSA MARKETING, *and* LAUREN MINGEE, | § § § § | |
| Defendants. | § § § | |

**MEMORANDUM AND ORDER**

Not long ago, lawyers were unable to advertise their services. That changed in 1977, with the Supreme Court's decision that lawyer advertising was protected as commercial free speech. *Bates v. State Bar of Arizona*, 433 U.S. 350 (1977). There are still limits on lawyer advertisements, including in disciplinary rules, codes of conduct, and state laws, limits designed to prevent deceptive or false advertising. The plaintiff in this case, a lawyer practicing in her own firm that bears her name, accuses the defendants, a lawyer referral service, of manipulating internet search terms to divert internet users looking for a personal injury lawyer away from the plaintiff and her law firm and toward the defendants' lawyers' referral service. The issue is whether the defendants' tactic is deceptive and improper.

Hilda Sibrian, an attorney and owner of the The Law Offices of Hilda Sibrian (collectively referred to as the "Sibrian plaintiffs"), sued McNeil Consultants, Quintessa Marketing, and their owner, Lauren Mingee, alleging trademark infringement, misappropriation, and tortious interference. (Docket Entry No. 1). The dispute arises over the defendants' practice of buying

keyword search terms used in internet searches for personal injury lawyers, in order to divert consumers looking for specific personal injury lawyers to the website for the defendants' referral service instead. At best, the defendants are operating in a moral gray area.  They exploit the fact that anyone can buy the top result of a Google search in order to influence or redirect consumers' choices. This is not the first case brought against these defendants for this practice. *See Jim S. Adler, P.C. v. McNeil Consultants, LLC*, No. 19-CV-2025 (N.D. Tex.). The *Adler* case is still pending, with a jury trial scheduled for October 2024.

The defendants have moved to dismiss the claims of trademark infringement brought by the Law Offices, and the claims of misappropriation, tortious interference, and individual claims against Lauren Mingee brought by both Sibrian and her Law Offices. (Docket Entry No. 9).  Based on the pleadings, the motion and response, the record, and the applicable law, the court grants the motion for dismissal without prejudice and with leave to amend as to the claims by both Sibrian and her Law Offices for misappropriation, tortious interference, as well as the Law Offices' claims for trademark infringement.  Sibrian's claims for federal and state trademark infringement, as well as both Sibrian and the Law Offices' claims for violations of the Lanham Act 43(a), unfair competition, and unjust enrichment, may proceed.

The reasons for these rulings are set out below.

## I.     Background

Hilda Sibrian owns and operates The Law Offices of Hilda Sibrian, based in Texas.  The firm does personal injury litigation. Sibrian has used the marks "Hilda Sibrian," "Hilda Leonor Sibrian," "The Law Offices of Hilda Sibrian," "Abogada Hilda Sibrian," and "Hilda L. Sibrian" for over 20 years in the firm's "branding," marketing, and public communications. (Docket Entry No. 1 at ¶ 16). The Sibrian marks are registered with the United States Patent and Trademark

Office under Reg. Nos. 6,104,981; 6,116,072; 6,116,075; 6,116,076; and 6,133,297. (*Id.* at ¶ 20). The Law Offices of Hilda Sibrian pays to promote itself on the internet by having users who enter keyword searches for the Sibrian marks be directed to the website for the Law Offices.

The defendants operate a legal referral service for personal injury claims, called the Accident Injury Legal Center. The defendants operate through a call center and a website. The defendants pay to have their legal referral service company name appear as a sponsored advertisement when a computer-user types the Sibrian marks as a keyword in an internet search. This results in the defendants' advertisement for their legal referral center showing up just before or just after the entry and link for The Law Offices of Hilda Sibrian. In addition, the defendants have a click-to-call option. This allows an individual on a mobile device to use the Sibrian marks to run a keyword search, but instead of the website for The Law Offices of Hilda Sibrian, the individual is presented with a link to click to talk with an employee of the defendants, not of The Law Offices of Hilda Sibrian. The defendants do not refer to Sibrian in these conversations.

The Sibrian plaintiffs sued the defendants over their use of the Sibrian marks in keyword searches. The Sibrian plaintiffs allege that the defendants are driving up the costs for the Law Office of Hilda Sibrian to promote its own marks. The Sibrian plaintiffs allege that the defendants are purposefully using deceptive techniques to divert consumers using the Sibrian marks from the website of the Law Offices to the website for the defendants' referral business and the click-to-call feature for the defendants' referral business. The click-to-call feature compounds the confusion because callers seeking to connect and talk with The Law Office of Hilda Sibrian believe that they are talking to a representative of that Law Offices when in fact they are talking to the defendants. Sibrian argues that this puts the business reputation of the Law Offices into the hands of the defendants. Finally, the Sibrian plaintiffs allege that the unauthorized use of the Sibrian

marks by the defendants is likely to confuse, to cause mistake, or to deceive customers and potential customers. The Sibrian plaintiffs allege that this confusing and unauthorized use of its own mark to deflect potential clients to the defendants' lawyer referral services has resulted in a loss of income for the Law Offices.

## II.     The Legal Standard for Dismissal

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*  (quoting *Twombly*, 550 U.S. at 556).

To withstand a Rule 12(b)(6) motion, a complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Lincoln v. Turner*, 874 F.3d 833, 839 (5th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557).  "A complaint 'does not need detailed factual allegations,' but the facts alleged 'must be enough to raise a right to relief

above the speculative level.'" *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019) (quoting *Twombly*, 550 U.S. at 555).  "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (alterations omitted) (quoting *Twombly*, 550 U.S. at 558).

A court reviewing a motion to dismiss under Rule 12(b)(6) may consider "(1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019).

## III.    Analysis

### A.  The Claims Against Mingee

The Sibrian plaintiffs' complaint primarily alleges actions by McNeil Consultants and Quintessa Marketing. The plaintiffs' complaint against the individual, Lauren Mingee, is that she "directs and controls Defendants' activities[.]" (Docket Entry No. 1 at ¶ 25). The Sibrian plaintiffs' allegations against Mingee comprise one paragraph, and the Sibrian plaintiffs allege no independent tortious acts by Mingee.

"The general rule in Texas is that [a] corporation's employee is personally liable for tortious acts which he directs or participates in during his employment." *Wallace v. Indus. Tank Cleaning Servs., LLC*, No. 22-CV-00297, 2023 WL 2568917, at *3 (S.D. Tex. Mar. 13, 2023) (internal quotations omitted). Allegations against an employee may be dismissed if the complaint "does not specifically describe how [the individual defendant] was personally involved in the [tortious acts, including] tortious interference with prospective relations." *Pension Advisory*

*Group, Ltd. v. Country Life Ins. Co.*, 771 F. Supp. 2d 680, 706 (S.D. Tex. 2011). The Sibrian plaintiffs' conclusory allegations do not explain Mingee's personal involvement, if any, in the alleged tortious conduct.

The Sibrian plaintiffs' current allegations are also insufficient to sustain a trademark infringement claim against Mingee. It is not enough to make conclusory allegations that the employee directs the acts of infringement. The employee must make the decision to use the infringing mark, *Guidry v. Louisiana Lightning, LLC*, No. 15-CV-6714, 2016 WL 3127256, at *2 (E.D. La. June 3, 2016), or personally promote and use the infringing mark or dress, *Farouk Systems, Inc. v. AG Global Products, LLC*, No. 4:15-CV-00465, 2015 WL 12778401, at *4 (S.D. Tex. June 22, 2015).

The Sibrian plaintiffs' claims against Mingee are dismissed, without prejudice and with leave to amend.

### B.  Trademark Infringement

The defendants argue that because Hilda Sibrian, the individual, owns the marks at issue, the Law Offices of Hilda Sibrian lacks standing to assert trademark infringement claims. (Docket Entry No. 9 at 14–15). The Sibrian plaintiffs do not appear to dispute this, but instead argue that while only Hilda Sibrian can assert trademark infringement claims for her registered trademarks, the Law Offices of Hilda Sibrian can assert infringement of its unregistered marks. (Docket Entry No. 10 at 19–20).

"[O]nly an owner or a true assignee has statutory standing to bring a claim under section 32(1) [of the Lanham Act]." *Rex Real Estate I, L.P. v. Rex Real Estate Exch., Inc.*, 80 F.4th 607, 616 (5th Cir. 2023). "The elements of common law trademark infringement under Texas law are the same as those under the Lanham Act." *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851

F.3d 440, 450 (5th Cir. 2017). The Law Offices does not dispute that it does not own or possess a true assignment of the rights to all the Sibrian marks, and offer no evidence to the contrary. Because of this, the Law Offices cannot maintain its claims for trademark infringement of the registered marks.

Although there are separate claims for registered and unregistered trademarks, "[t]he same tests apply to . . . trademarks . . . to determine whether they are protectible and whether they have been infringed, regardless of whether they are registered or unregistered." *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235 n.8 (5th Cir. 2010). The first requirement of this test is to "establish ownership in a legally protectible mark." *Id.* at 235. As the defendants argue, the Sibrian plaintiffs' complaint and briefing does not allege that the Law Offices owns such a mark, whether registered or unregistered. (Docket Entry No. 15 at 21).

The claims by the Law Offices for trademark infringement under section 32(1) of the Lanham Act or under Texas common law as to the registered marks are dismissed. The Sibrian plaintiffs may amend the complaint to describe the alleged unregistered marks that The Law Offices of Hilda Sibrian owns, should they exist.

### C. Misappropriation

The elements of common law misappropriation are "(1) the creation of plaintiff's product . . . through extensive time, labor, skill, and money; (2) the defendant's use of that product in competition with the plaintiff, thereby gaining a special advantage in that competition (i.e., a "free ride") because defendant is burdened with little or none of the expense incurred by the plaintiff; and (3) commercial damage to the plaintiff." *BP Auto., L.P. v. RML Waxahachie Dodge, L.L.C.*, 448 S.W.3d 562, 571–72 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *Vertex Servs., LLC v. Oceanwide Houston, Inc.*, 583 S.W.3d 841, 849 (Tex. App. 2019).

District courts in Texas have consistently rejected trademark misappropriation claims. *See Festive Farm Co. v. BE Creations & Designs, Inc.*, No. 22-CV-00994, 2023 WL 3662661, at *3 (W.D. Tex. May 9, 2023), *report and recommendation adopted*, 2023 WL 3656943 (W.D. Tex. May 24, 2023) (collecting cases); *Jim S. Adler, P.C. v. Angel L. Reyes & Associates PC*, No. 19-CV-2027, 2020 WL 5099596, at *13 (N.D. Tex. Aug. 7, 2020), *report and recommendation adopted*, 2020 WL 5094678 (N.D. Tex. Aug. 29, 2020) (recommending dismissal of claims for misappropriation of name, likeness, and business opportunity because the "facts and allegations in the complaint are more akin to a claim for misappropriation of a trademark and, thus, precluded as a matter of law."); *Opportune LLP v. Oportun, Inc.*, No. 18-CV-007, 2018 WL 8755511, at *3 (S.D. Tex. Apr. 24, 2018) (dismissing a misappropriation claim because plaintiff alleged no misappropriation other than that of the plaintiff's trademarks).

The Sibrian plaintiffs argue that they are not alleging trademark misappropriation, but rather general misappropriation. (Docket Entry No. 10 at 22–23). However, all of the Sibrian plaintiffs' allegations pertain to the use of its trademarked terms and trade dress, not a product or service. When the pleadings "do[] not mention specific products and focuses instead on the trade dress[,]" the claim is more appropriately considered one for trademark misappropriation and is properly dismissed. *See Festive Farm Co.*, 2023 WL 3662661, at *4. Courts have previously found that allegations that the defendants purchased trademarked names for search engine keywords "are more akin to a claim for misappropriation of trademark" and are appropriate for dismissal at the motion to dismiss stage. *See Angel L. Reyes & Associates PC*, 2020 WL 5099596, at *13.

The Sibrian plaintiffs' claim is dismissed without prejudice. The Sibrian plaintiffs may amend their complaint to specifically allege misappropriation that goes beyond the use of the marks in keyword searches.

8

### D.  Tortious Interference

Texas recognizes tortious interference not just with existing contractual relationships, but also with prospective business relationships. *El Paso Healthcare Sys., Ltd. v. Murphy*, 518 S.W.3d 412, 421 (Tex. 2017). "To establish a claim for tortious interference with prospective business relations, a plaintiff must prove that: (1) there was a reasonable probability that the parties would have entered into a contractual relationship; (2) the defendant committed an 'independently tortious or unlawful act' that prevented the relationship from occurring; (3) the defendant committed the act with a conscious desire to prevent the relationship from occurring or knew that the interference was certain or substantially certain to occur as a result of his conduct; and (4) the plaintiff suffered actual harm or damage as a result of the defendant's interference— that is, that the defendant's actions prevented the relationship from occurring." *Alliantgroup, L.P. v. Feingold*, 803 F. Supp. 2d 610, 628 (S.D. Tex. 2011) (citing *Faucette v. Chantos,* 322 S.W.3d 901, 913–14 (Tex. App.—Houston [14 Dist.] 2010, no pet.)).

The defendants argues that the Sibrian plaintiffs fail to allege a "reasonable probability" that either Hilda Sibrian or her Law Offices would have entered into a contractual relationship with an individual who instead found the website for the defendant's law firm referral service. (Docket Entry No. 9 at 10). The Sibrian plaintiffs alleged in their complaint that "[t]here existed a reasonable probability that Plaintiffs would have established a business relationship with prospective customers and would have entered into future business relationships with prospective customers absent Defendants' misappropriation of the SIBRIAN Marks." (Docket Entry No. 1 at ¶ 89). The Sibrian plaintiffs argue that this is sufficient to survive at the motion to dismiss stage, and that discovery is needed to prove this claim. (Docket Entry No. 10 at 20–21). It is true that the

Sibrian plaintiffs do not need to fully prove its claims at this stage of the proceedings. But more than conclusory allegations are needed.

For example, in *Weatherford Int'l, LLC v. Binstock*, 452 F. Supp. 3d 561 (S.D. Tex. 2020), the plaintiff survived the motion to dismiss stage by pleading "ongoing business relationships with 24 specific customers that were affected by the Defendants' actions." By contrast, in *Centennial Bank v. Holmes*, --- F. Supp. 3d ---, 2024 WL 733649 (N.D. Tex. Feb. 20, 2024), the court dismissed claims where "[t]he factual allegations . . . do not connect [defendants'] actions to any customers or possible business relations" while denying dismissal as to a different defendant who was alleged to have taken concrete steps to divert a specific customer. *Id.* at *25.

Because the Sibrian plaintiffs have failed to allege that there was a reasonable probability of entering into a contractual relationship with a potential client that was instead diverted by the defendants, the claim for tortious interference is denied without prejudice and with leave to amend.

### E.  Conclusion

The defendants' motion for partial dismissal, (Docket Entry No. 9) is granted without prejudice. The Sibrian plaintiffs may amend their complaint no later than May 17, 2024.

SIGNED on May 6, 2024, at Houston, Texas.

_____

Lee H. Rosenthal
United States District Judge

10