IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| THE LAW OFFICES OF HILDA L. SIBRIAN, P.C. and HILDA L. SIBRIAN, | § § § § | |
| *Plaintiffs*, | § | Civil Action No. 4:23-cv-04643 |
| v. | § § | |
| MCNEIL CONSULTANTS, LLC D/B/A ACCIDENT INJURY LEGAL CENTER, QUINTESSA MARKETING, LLC D/B/A ACCIDENT INJURY LEGAL CENTER, and LAUREN MINGEE, | § § § § § § § | |
| *Defendants*. | § | |

## PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Plaintiffs The Law Offices of Hilda L. Sibrian, P.C. and Hilda L. Sibrian ("Sibrian")

file this Motion for Preliminary Injunction and would show the Court as follows:

# TABLE OF CONTENTS

I.    SUMMARY OF THE ARGUMENT ........................................................................ 1

II.   NATURE AND STAGE OF THE PROCEEDING..................................................... 2

III.  ISSUES TO BE DECIDED AND STANDARD OF REVIEW ................................. 2

IV.   FACTUAL BACKGROUND ................................................................................... 2

    A.  Sibrian ........................................................................................................... 3

    B.  Defendants' unlawful "click-to-call" scheme...................................................... 5

    C.  Evidence of actual confusion and Defendants' intent ......................................... 7

    D.  Injunctive relief is necessary to stop Defendants' unlawful scheme................... 10

V.    ARGUMENT & AUTHORITIES ............................................................................ 11

    A.  Element one: Sibrian is substantially likely to succeed on the merits. .............. 11

    B.  Element two: Defendants' infringement irreparably harms Sibrian. ................. 21

    C.  Element three: the balance of the potential injuries favors Sibrian. .................. 22

    D.  Element four: granting an injunction would serve the public interest. .............. 23

VI.   SECURITY ........................................................................................................... 24

VII.  CONCLUSION ...................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Abraham v. Alpha Chi Omega,*
    708 F.3d 614 (5th Cir. 2013)..................................................................22

*Am. Rice, Inc. v. Producers Rice Mill, Inc.,*
    518 F.3d 321 (5th Cir. 2008)............................................................12, 13

*Amazing Spaces, Inc. v. Metro Mini Storage,*
    608 F.3d 225 (5th Cir. 2010)..................................................................11

*Bd. of Regents of the Univ. of Houston Sys. on Behalf of the Univ. of Houston Sys. & Its Member Institutions v. Houston Coll. of* L., Inc.,
    214 F. Supp. 3d 573 (S.D. Tex. 2016) ....................................................20

*Beatriz Ball, L.L.C. v. Barbagallo Company, L.L.C.,*
    40 F.4th 308 (5th Cir. 2022)...................................................................14

*Byrum v. Landreth,*
    566 F.3d 442 (5th Cir. 2009)..............................................................2, 11

*Century 21 Real Estate Corp. v. Sandlin,*
    846 F.2d 1175 (9th Cir. 1988).................................................................13

*Elvis Presley Enterprises, Inc. v. Capece,*
    141 F.3d 188 (5th Cir. 1998)................................................14, 15, 17, 20

*Exxon Corp. v. Texas Motor Exch. of Houston, Inc.,*
    628 F.2d 500 (5th Cir. 1980)..................................................................15

*Good Gov't v. Coal. for Better Gov't,*
    901 F.3d 498 (5th Cir. 2018)............................................................12, 13

*Janvey v. Alguire,*
    647 F.3d 585 (5th Cir. 2011)..................................................................23

*Jim S. Adler, P.C. v. McNeil Consultants, L.L.C.,*
    10 F.4th 422 (5th Cir. 2021)...................................................................14

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara,*
    335 F.3d 357 (5th Cir. 2003)....................................................................2

*La. World Exposition v. Logue*,
    746 F.2d 1033 (5th Cir. 1984) .................................................................................... 19

*MWK Recruiting Inc. v. Jowers*,
    833 F. App'x 560 (5th Cir. 2020) ................................................................................ 2

*Petro Franchise Sys., LLC v. All Am. Properties, Inc.*,
    607 F. Supp. 2d 781 (W.D. Tex. 2009) ...................................................................... 24

*Quantum Fitness Corp. v. Quantum Lifestyles Ctrs., L.L.C.*,
    83 F. Supp. 2d 810 (S.D. Tex. 1999) ................................................. 13, 14, 17, 22, 23

*Sirius Computer Sols., Inc. v. Sparks*,
    138 F. Supp. 3d 821 (W.D. Tex. 2015) ...................................................................... 22

*Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*,
    851 F.3d 440 (5th Cir. 2017) ...................................................................................... 19

*Texans for Free Enter. v. Tex. Ethics Comm'n*,
    732 F.3d 535 (5th Cir. 2013) ................................................................................. 2, 11

*T-Mobile US, Inc. v. AIO Wireless LLC*,
    991 F. Supp. 2d 888 (S.D. Tex. 2014) ............................................................ 13, 15, 16

*Whirlpool Corp. v. Shenzhen Sanlida Elec. Tech. Co., Ltd.*,
    80 F.4th 536 (5th Cir. 2023) ................................................................................. 21, 23

*World Carpets, Inc. v. Dick Littrell's New World Carpets*,
    438 F.2d 482 (5th Cir.1971) ...................................................................................... 19

*Xtreme Lashes, LLC v. Xtended Beauty, Inc.*,
    576 F.3d 221 (5th Cir. 2009) ......................................................... 12, 14, 16, 19, 20

*YETI Coolers, LLC v. Imagen Brands, LLC*,
    No. 1:16-CV-00578-RP, 2017 WL 2199012 (W.D. Tex. May 18, 2017) ............... 11

## Statutes

15 U.S.C. § 1051 ............................................................................................................... 3
15 U.S.C. § 1057(b) ........................................................................................................ 14
15 U.S.C. § 1115(a) ........................................................................................................ 14
15 U.S.C. § 1116(a) ........................................................................................................ 23
Pub. L. No. 116-260, § 226(a), 134 Stat. 1182 ............................................................. 23

**Rules**

Fed. R. Civ. P. 65(c) ...........................................................................................26

## SUMMARY OF THE ARGUMENT

Defendants operate a lawyer referral service in which they implement a scheme of bidding on the names of prominent personal injury lawyers as search term key words on Google. By doing so, Defendants confuse the potential clients who are seeking any attorney in their time of need. Specifically, Defendants have bid on the trademarked and protected name of Hilda Sibrian (and other related marks) to place "click-to-call" advertisements at the top of a Google search, so that accident victims who click on the ad are not re-directed to a website, but instead immediately placed on a telephone call to Defendants' intake department. This practice has caused actual confusion—the evidence of which was only recently produced by Defendants—when potential clients repeatedly ask Defendants' intake representatives for Sibrian. Those intake representatives are trained and instructed by Defendants not to identify their affiliation with Defendants, and to keep the client on the line in order to secure a referral for lawyers other than Sibrian. This practice plainly meets the elements of trademark infringement and unfair competition.

It also irreparably harms Sibrian; Defendants admit they do not track the revenue they receive from individual clients who mistakenly called them when they thought they'd be reaching Sibrian. And Sibrian cannot identify what results she may have been able to obtain if she had represented these accident victims instead of some other lawyer to whom Defendants referred the case. Accordingly, because of this uniquely harmful practice of deliberately confusing individuals who are seeking legal representation, Sibrian seeks a preliminary injunction to stop Defendants' ongoing scheme, prevent further irreparable harm, and protect the public interest.

## NATURE AND STAGE OF THE PROCEEDING

Sibrian has brought claims for trademark infringement and unfair competition under the Trademark Act of 1946, as amended, 15 U.S.C. § 1051 *et seq.* (the "Lanham Act"), and for trademark infringement, unfair competition, and unjust enrichment under Texas common law. On July 12, 2024, Defendants produced for the first time evidence that their unlawful conduct has directly led to actual confusion of Sibrian's existing and potential clients. When Sibrian discussed this evidence with Defendants, Defendants explicitly confirmed they intended to continue this unlawful conduct. Plaintiffs now seek a preliminary injunction to stop the irreparable harm Defendants are causing.

## ISSUES TO BE DECIDED AND STANDARD OF REVIEW

The sole issue presented in this motion is whether Sibrian is entitled to a preliminary injunction. *See Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 536–37 (5th Cir. 2013) (quoting *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009)). "[T]he ultimate decision whether to grant or deny a preliminary injunction is reviewed only for abuse of discretion, [but] a decision grounded in erroneous legal principles is reviewed *de novo.*" *MWK Recruiting Inc. v. Jowers*, 833 F. App'x 560, 561 (5th Cir. 2020) (quoting *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 363 (5th Cir. 2003).

## FACTUAL BACKGROUND

Defendants are not lawyers or a law firm; they are a lawyer referral service that makes money by collecting leads on personal injury cases and selling those leads to other lawyers. Dkt. 33 at p. 8-9; Ex. 1 (Interrog. No. 19). Defendants have been, and presently

are, using Sibrian's registered trademarks to intentionally mislead vulnerable personal injury victims into believing that they are contacting Sibrian for legal representation. *See, e.g.*, Ex. 2; Ex. 3 at QUINTESSA_000071; Ex. 4; Ex. 5; Ex. 6; Ex. 7; Ex. 8; Ex. 9; Ex. 10; Ex. 31 (certified transcript of Ex. 4); Ex. 33 (certified transcript of Ex. 5); Ex. 34 (certified transcript and translation of Ex. 6). Once Defendants have the potential client on the phone, Defendants use confusing tactics to divert or attempt to divert those potential clients to attorneys *other than* Sibrian. Ex. 2-6; Ex. 31; Ex. 33-34. Defendants carry out this scheme by (1) purchasing Sibrian's registered trademarks as keyword search terms for Google searches on mobile devices; (2) placing confusing "click-to-call"[1] ads in response to those search terms that fail to adequately identify their source or affiliation; and (3) implementing call answering tactics that deliberately avoid identifying who Defendants are. Ex. 2-10. The effect is that personal injury victims looking for legal representation are tricked into they will be contacting Sibrian when, in fact, they are contacting Defendants' legal referral service. Ex. 4-6; Ex. 31; Ex. 33-34; Ex. 2. Despite this, Defendants have stated they are "not willing to suspend [their] ad campaigns triggered by the Sibrian Marks." Ex. 11; *see also* Ex. 1 (Interrog. No. 13). A preliminary injunction is therefore warranted.

### A. Sibrian

Hilda Sibrian runs a successful personal injury law firm in Texas—The Law Offices of Hilda L. Sibrian, P.C.—which has been dedicated to advocating for the interests, rights, and recovery of its clients for over twenty years. *See, e.g.,* Ex. 12. In that time, Sibrian has

---

[1] The "click-to-call" ads are tools for search engine advertising on mobile devices that operate by presenting a phone number to a user in response to keywords being entered into a search engine. When a user taps the number shown on their device, the user's phone automatically calls that number.

consistently and continuously used the HILDA SIBRAN name and trademark, and its variations, including HILDA LEONOR SIBRIAN, THE LAW OFFICES OF HILDA SIBRIAN, ABOGADA HILDA SIBRIAN, and HILDA L. SIBRIAN, (collectively, the "SIBRIAN Marks") in connection with her provision of legal services on behalf of personal injury victims. *See* Ex. 12-16. Hilda Sibrian registered the SIBRIAN Marks with the United States Patent and Trademark Office. *See* Ex. 12-16.

Sibrian has invested significant resources in advertising her services using the SIBRIAN Marks across a range of advertising mediums in Greater Houston and San Antonio, to both English-speaking and Spanish-speaking communities. *See, e.g.*, Ex. 17-22; Ex. 10; Ex. 23 (Interrog. No. 6); Ex. 8. One significant component of Sibrian's advertising is the purchase of search term keywords through Google, to place online Google Ads when a user makes a Google search. *See* Ex. 8; Ex. 24. ████████████ ████████████████████████████████████████████████████████ Ex. 25.

Each of Sibrian's search engine advertisements clearly identify Sibrian as the source of the advertisement, as exemplified in the following mobile device screenshot:



Ex. 26 (annotated).  Further, when users follow up and call Sibrian, Sibrian's employees are trained to immediately identify their affiliation.  *See* Ex. 27 (intake script: ████) ████████████████████████████████████████ ) (emphasis added).

### B.  Defendants' unlawful "click-to-call" scheme

Defendants operate their lawyer referral website and associated call center using the generic name "accidentinjurylegalcenter.com."  *See* Dkt. 33 at p. 25.  Defendants advertise and operate in Texas in both English and Spanish.  *See* Ex. 28 (https://accidentinjurylegalcenter.com/car-accident-lawyer-texas/); *see also* Ex. 6.  By design, this name could be associated with any personal injury lawyer in the United States. Defendants then purchase the SIBRIAN Marks as keyword search terms because they anticipate victims of injuries seeking a lawyer will search for Sibrian in response to other advertising and overall name recognition.[2] Ex. 7.  So, for example, when someone gets in

---

[2] ████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

an accident and then searches the SIBRIAN Marks on Google from their mobile device,

Defendants' advertisements pop up:



Ex. 8 (annotated).  Defendants' ads do not include adequate source identification; instead,

they use vague, generic headlines and descriptions that could apply to any personal injury

lawyer; they also include a "click-to-call" button.  *Id.*; *see also* Ex. 29.  When a potential

client taps that "click-to-call" ad, it automatically dials Defendants' call center without re-

directing to a website that would allow the potential client to figure out who the ad is

associated with.  *See id.*  Defendants rely on this direct "click-to-call" access to potential

clients, many of whom are likely to be in a vulnerable state following an accident involving

themselves or one of their loved ones, to intercept those clients before the clients are able

to talk to their attorney of choice.

_____

## C. Evidence of actual confusion and Defendants' intent

On July 12, 2024, Defendants finally produced recordings of telephone calls their intake department received that contained references to Sibrian.[3] The recordings contain clear evidence of actual confusion from potential clients who, although they had the intent and belief that their clicking Defendants' "click-to-call" ad would bring them to Sibrian, ended up talking to Defendants' intake department instead. *See* Ex. 4-6; Ex. 31; Ex. 33-34. Here's one striking example:



---

[3] When this discovery was originally served, Sibrian was represented by different counsel. The undersigned counsel appeared in the case on June 21, 2024, after initial responses to discovery had been served by Defendants but no documents produced. After pressing for Defendants to address their discovery deficiencies, Defendants finally made their first production on July 12, 2024. Ex. 36.

Ex. 31 at 2:12-16 *and* 2:20-3:7 (emphasis added). In fact, even in that conversation, Defendants' intake representative explicitly acknowledges the potential client's confusion. *Id.* at 3:25-4:7 ███████████████████████████████████████████

███████████████████████████

This is not a one-off occurrence. A spreadsheet produced by Defendants details at least ████████████████████████████████████████████

██████████████████  Ex. 2.  The █████████████████████████████

█████████████████████████████████████████████████

████████████████████:

- ████████████████████████████████████████

▮ ███████████████████████████████████
████████

▮ ████████████████████████████████████
█████████████████

▮ ██████████████████████████████████████

▮ ████████████████████████████████████
████████████

▮ ███████████████████████████████████
██████████████████

▮ █████████████████████████████████████

▮ ████████████████████████████
█████████

▮ ██████████████████████████████████
█████████████



*Id. See also* Ex. 4-6; Ex. 31; Ex. 33-34.

This confusion is a feature of Defendants' scheme, not a bug. Defendants specifically train their intake personnel to follow scripts tailored to foster confusion. *See* Ex. 3 at QUINTESSA_000071. For example, Defendants' training manual shows that intake representatives are trained to always begin a call not by identifying who they work for, but to only give their name and ask about an accident:



*Id.* When returning missed calls, they refer to themselves as from "the Intake department," so that any potential client will not be clued in to the fact that their missed call or voicemail didn't make it to the lawyer they were trying to reach (*id.*):



These scripts are deliberately designed to foster a potential client's mistaken belief that they have contacted Sibrian at least long enough for Defendants to collect sensitive information, build rapport, and attempt to convince the callers to accept referrals to another

lawyer that they didn't intend to choose. *See* Ex. 2 at



Finally, Defendants' internal messages prove it is their intent to siphon off Sibrian's potential clients through their scheme, even after those potential clients make clear that they are "very set on The Law Offices of Hilda Sibrian":



Ex. 32.

### D. Injunctive relief is necessary to stop Defendants' unlawful scheme.

After reviewing Defendants' production, Sibrian asked counsel for Defendants if Defendants would agree to stop purchasing ads using the SIBRIAN Marks in light of the evidence of actual confusion. Defendants responded by saying they are "not willing to suspend [their] ad campaigns triggered by the Sibrian Marks." Ex. 11.  And, one week later, Defendants confirmed in discovery that their bidding on the SIBRIAN Marks "***generally remains ongoing***." Ex. 1 (Interrog. No. 13) (emphasis added).  Unless and until Defendants are forced to cease their misleading behavior, potential clients will continue to be confused and Defendants' scheme will continue to cause irreparable harm to Sibrian.

## ARGUMENT & AUTHORITIES

For the Court to issue a preliminary injunction, Sibrian must establish "(1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest." *Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 536–37 (5th Cir. 2013) (quoting *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009)).   Sibrian satisfies each of these elements.

### A.  Element one: Sibrian is substantially likely to succeed on the merits.

Sibrian has brought five claims against Defendants: (1) federal trademark infringement; (2) violation of Lanham Act Section 43(a); (3) common law trademark infringement; (4) common law unfair competition; and (5) unjust enrichment.  *See* Dkt. 27 (Plaintiff's Amended Complaint).

All five of Sibrian's counts are evaluated under the same two-part legal test.  *See Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235 n.7 (5th Cir. 2010) ("A trademark infringement and unfair competition action under Texas common law presents essentially no difference in issues than those under federal trademark infringement actions") (internal citations and quotation marks omitted); *id.* n.8 (acknowledging that the same test applies to violations of the Lanham Act § 32 (registered marks) and § 43 (unregistered marks)); *YETI Coolers, LLC v. Imagen Brands, LLC*, No. 1:16-CV-00578-RP, 2017 WL 2199012, *2 (W.D. Tex. May 18, 2017) ("An identical test applies to claims

for trademark infringement, unfair competition, and unjust enrichment under Texas common law.") (internal quotation marks and citations omitted).

Under the two-part test, a plaintiff must show (1) ownership of a legally protectable mark and (2) a likelihood of confusion created by an infringing mark. *See All. for Good Gov't v. Coal. for Better Gov't*, 901 F.3d 498, 505 (5th Cir. 2018).

### 1.    Sibrian has legally protectable trademarks.

Sibrian owns the SIBRIAN marks for use in legal services in areas of personal injury and wrongful death.  *See* Ex. 12-16.  The registration certificates for those marks constitute "prima facie evidence of the validity of the registered mark[s] and of the registration of the mark[s], of the registrant's ownership of the mark[s], and of the registrant's exclusive right to use the registered mark[s] in commerce on or in connection with the goods or services specified in the registration."  15 U.S.C.A. § 1115(a); *see also* 15 U.S.C.A. § 1057(b). Further, Defendants have not presented any counterclaim or affirmative defense challenging the validity of Sibrian's marks.  *See* Dkt. 33 at p. 23.  The SIBRIAN Marks are therefore valid and legally protectable.

### 2.    Consumers are likely to confuse Sibrian with Defendants.

Courts in the Fifth Circuit "consider[] the following eight nonexhaustive 'digits' to assess likelihood of confusion: (1) strength of the mark; (2) mark similarity; (3) product or service similarity; (4) outlet and purchaser identity; (5) advertising media identity; (6) defendant's intent; (7) actual confusion; and (8) care exercised by potential purchasers." *All. for Good Gov't*, 901 F.3d at 508 (5th Cir. 2018) (citing *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008) and *Xtreme Lashes, LLC v. Xtended*

*Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009). "'The absence or presence of any one factor ordinarily is not dispositive; indeed, a finding of likelihood of confusion need not be supported even by a majority of the ... factors.'" *All. for Good Gov't*, 901 F.3d at 508 (5th Cir. 2018) (quoting *Am. Rice, Inc.*, 518 F.3d at 329 n.19)). As shown below, however, *each* of these factors weigh in Sibrian's favor of a finding of likelihood of confusion.

>   **i.    The SIBRIAN Marks are strong.**

The SIBRIAN Marks are strong because they have acquired secondary meaning. *See T-Mobile US, Inc. v. AIO Wireless LLC*, 991 F. Supp. 2d 888, 914 (S.D. Tex. 2014) (outlining metrics by which to measure trademark's strength). The SIBRIAN Marks clearly identify the source of the subject services: The Law Offices of Hilda L. Sibrian, P.C. *See id.* ("The strength of a trademark in the marketplace is measured by its effectiveness in identifying a source of goods.") (quoting *Quantum Fitness Corp. v. Quantum Lifestyles Ctrs., L.L.C.*, 83 F. Supp. 2d 810, 818–19 (S.D. Tex. 1999)).

Moreover, "[m]arks may be strengthened [in the marketplace] by extensive advertising, length of time in business, public recognition, and uniqueness." *Id.* (alterations in original) (quoting *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1179 (9th Cir. 1988)). Sibrian has been using the SIBRIAN Marks since January 1, 2004 across billboard signage, television, radio, social media, and web advertising. *See* Ex. 10; Ex. 12-21. Callers to Defendants' intake department even ████████████████████████████ ██████████████████████ Ex. 4 and 31 at 3:1-3. And other than infringing uses that Sibrian is actively attempting to prevent, there are no third-party users of similar marks to identify a source of goods or services, which is also relevant in considering the

– 13 –

strength of the mark. *See Quantum Fitness Corp.*, 83 F. Supp. 2d at 914-15.

Indeed, the fact that Defendants created an entire ad campaign based on the SIBRIAN Marks shows the Defendants' own appreciation of the marks' strength. *See Beatriz Ball, L.L.C. v. Barbagallo Company, L.L.C.*, 40 F.4th 308, 320 (5th Cir. 2022) ("[E]vidence of deliberate copying can be a weighty factor if it appears the copying attempted to benefit from the perceived secondary meaning.").

This factor therefore weighs in favor of a finding of actual confusion.

### ii. The marks used by both parties are identical.

Mark similarity "is determined by comparing the marks' appearance, sound, and meaning." *Xtreme Lashes, LLC*, 576 F.3d at 228 (quoting *Elvis Presley Enterprises, Inc. v. Capece*, 141 F.3d 188, 201 (5th Cir. 1998)). "The relevant inquiry is whether, under the circumstances of the use, the marks are sufficiently similar that prospective purchasers are likely to believe that the two users are somehow associated" or have a common origin. *Elvis Presley Enterprises, Inc.*, 141 F.3d at 201.

Here, both parties use the SIBRIAN Marks in commerce by purchasing them as keyword searches.[4]  Defendants' use is identical to Sibrian's in all material respects:



---

[4] Purchasing the SIBRIAN Marks as keyword search terms constitutes a "use" of the mark in commerce, regardless of whether those marks are visible to consumers. *See Jim S. Adler, P.C. v. McNeil Consultants, L.L.C.*, 10 F.4th 422, 429 (5th Cir. 2021) ("[T]he district court concluded that Adler's claims fail as a matter of law because McNeil's use of the Adler marks is not visible to the consumer. We find no Fifth Circuit authority for such a rule of law, and we disagree with it.").

[5] Ex. 24 (column B) (excerpts).

[6] Ex. 7 (Sibrian – 2020 column D, and Sibrian -2021-2024 column C) (excerpts)

[redacted]

"[U]nder the circumstances of [Defendants'] use," their keyword purchases cause Defendants' generic ads to appear on a screen near or next to Sibrian's ads. *Elvis Presley Enters.*, 141 F.3d at 201; *see* Ex. 8. As a result, as discussed further below, "prospective purchasers" actually believe "that the two users are somehow associated." *Id.* This identical use clearly supports a finding of likelihood of confusion.

### iii.    Both parties offer similar products and services.

"The greater the similarity between products and services, the greater the likelihood of confusion." *Elvis Presley Enters.*, 141 F.3d at 202 (quoting *Exxon Corp. v. Texas Motor Exch. of Houston, Inc.*, 628 F.2d 500, 505 (5th Cir. 1980)); *see also T-Mobile*, 991 F. Supp. 2d at 915 (finding that the product similarity factor supports the plaintiff where the parties are direct competitors).

Defendants operate a lawyer referral website at accidentinjurylegalcenter.com and a call center associated with that site. Dkt. 33 at ¶ 25. The lawyers to which Defendants refer their callers are personal injury lawyers. *See* Ex. 10; *see also* Ex. 4 and 31 at 4:16-17 [redacted] Sibrian also provides legal services for personal injury victims in Texas in both English and Spanish. Ex. 23 (Interrog. No. 6); Ex. 17-20; Ex. 8. This also supports a finding of a likelihood of confusion.

### iv.    Both parties target the same audience.

Sibrian's actual and potential clients significantly overlap with the Defendants'

callers.  Specifically, both Sibrian and Defendants offer services to English and Spanish speaking personal injury victims in the state of Texas.  *Compare* Ex. 28; *and* Ex. 6 and 34; *with* Ex. 23 (Interrog. No. 6); Ex. 17-20; Ex. 8.  The overlap is further evidenced by the many instances where callers reached out to Defendants believing they were calling Sibrian, and by the fact that Defendants endeavored to solicit callers who Defendants knew were ███████████████████████████  Ex. 32.

This strongly supports a finding of a likelihood of confusion because the target audience nearly, if not entirely, overlaps. *See T-Mobile*, 991 F. Supp. 2d at 915 (near complete overlap of target consumers found to weigh heavily in favor of plaintiff).

### v.     Both parties advertise through the same media.

"This particular digit of confusion considers the degree of overlap in the marketing approaches of the plaintiff and the defendant." *Id.* at 920. Here, again, the overlap is complete. Like Sibrian, Defendants advertise by purchasing search term keywords for the SIBRIAN Marks from Google.  *Compare* Ex. 8 (Sibrian's Ad); Ex. 9 (Sibrian's Ad); Ex. 22; *and* Ex. 24-25 *with* Ex. 7; Ex. 8; Ex. 29; Ex. 30.  The advertisements for the respective parties even show up in response to the same search.  *See, e.g.*, Ex. 8.  This further supports a finding of a likelihood of confusion. *See Xtreme Lashes*, 576 F.3d at 229 (5th Cir. 2009) (finding an inference of similar advertising and marketing channels where both companies were engaged in print advertisements, direct mailings, and "internet promotion").

### vi.    Defendants intend to cause confusion by their use of the SIBRIAN Marks.

"Proof of an intent to confuse the public is not necessary to a finding of a likelihood

of confusion." *Quantum Fitness Corp.*, 83 F. Supp. 2d at 828 (quoting *Elvis Presley Enters.*, 141 F.3d at 203). Indeed, "[d]irect proof of bad faith is rarely present." *Id.* But "[i]f a mark was adopted with the intent to confuse the public, that alone may be sufficient to justify an inference of a likelihood of confusion." *Id.* (alteration in original). Here, Sibrian has ample evidence, both direct and circumstantial, that Defendants operate with the goal of confusing customers.

For instance, Defendants deliberately use vague generalities in their online advertisements. *See* Ex. 8; Ex. 29. That, combined with the fact that Defendants bid enough on the SIBRIAN Marks to have their advertisements at the top of the page on the small screens of mobile devices, leaves no doubt that Defendants are intending to blur the lines between the two. Ex. 8. A potential client, knowing they are seeking help from a personal injury lawyer, could easily view Sibrian as an "accident injury legal center." *See id.* Those same potential clients could reasonably believe that Sibrian has a "Car Accident Helpline," and they do in fact view Sibrian as a "Texas Accident Lawyer[]." *Id.*

Defendants actually train their employees to answer calls in a way that disguises their lack of affiliation with Sibrian. *See* Ex. 3. Even when asked point blank whether they are affiliated with Hilda Sibrian, Defendants dodge the question (Ex. 31; Ex. 34):



The notes taken by Defendants' employees reflects their own impressions that callers were in fact associating Defendants with Sibrian. Ex. 2. These misleading call openings are made *after* a user types Sibrian's marks into a search engine and "click[s]-to-call" a number they evidently believe is associated with Sibrian. *See, e.g.*, Ex. 4; Ex. 31. Once Sibrian's potential clients are drawn in, Defendants exploit their confusion by gathering as much information as possible and seek to capitalize on that confusion by referring that potential client to another lawyer. *See* Ex. 32; Ex. 4.

Defendants' entire purpose for purchasing the SIBRIAN Marks as search terms for advertising is to generate confusion of a potential client and then capitalize by cutting in line ahead of Sibrian.  *See* Ex. 7. Otherwise, why buy the key words at all? Injury victims have done exactly as Defendants intend and even communicated their subsequent confusion directly to Defendants on recorded lines.  Ex. 4-6; Ex. 31; Ex. 33-34.  This strongly supports a finding of a likelihood of confusion.

### vii.    Consumers actually confuse Defendants for Sibrian.

Of the eight "digits of confusion," courts view actual confusion as "the best evidence of a likelihood of confusion." *See Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 457 (5th Cir. 2017) (internal quotation marks and citations omitted). Courts "set a low bar for this showing" by requiring "very little proof of actual confusion . . . to prove likelihood of confusion." *Id.* In fact, evidence of "a single known incident of actual confusion by a consumer has been found to be sufficient evidence to support the district court's finding of actual confusion." *Id.* (citing *La. World Exposition v. Logue*, 746 F.2d 1033, 1041 (5th Cir. 1984)). If a plaintiff provides proof of actual confusion, a defendant must provide "an almost overwhelming amount of proof . . . to refute such proof." *Xtreme Lashes, LLC*, 576 F.3d at 229 (quoting *World Carpets, Inc. v. Dick Littrell's New World Carpets*, 438 F.2d 482, 489 (5th Cir.1971).  Even if initial consumer confusion is quickly dispelled, this initial misunderstanding is evidence of confusion. *Id.*

The Defendants' recordings and call logs (many examples of which are shown above) prove there is actual confusion. *See* Ex. 4-6; Ex. 31; Ex. 33-34; Ex. 2.  Defendants do little (if anything) to try and dispel the confusion, as shown by one caller who asked for

– 19 –

Sibrian ***five times***.  Ex. 4; Ex. 31.  And this call was by no means an isolated incident; Defendants' own notes reflect ███████████████████████████████████████ ████████████████  *See* Ex. 2.

The fact that Defendants may eventually suggest to a caller that they are not affiliated with Sibrian does not dispel the evidence of their malicious intent, nor does it erase the fact that confusion exists.  *See Bd. of Regents of the Univ. of Houston Sys. on Behalf of the Univ. of Houston Sys. & Its Member Institutions v. Houston Coll. of L., Inc.*, 214 F. Supp. 3d 573, 600 (S.D. Tex. 2016) (granting preliminary injunction based in part on initial interest confusion); *see also Elvis Presley Enterprises, Inc.*, 141 F.3d at 204 ("Once in the door, the confusion has succeeded because some patrons may stay, despite realizing that the bar has no relationship with" the senior user.). Therefore, this factor also supports a likelihood of confusion.

### viii.    The degree of care exercised by potential purchasers is relatively low.

Generally, "[w]here items are relatively inexpensive, a buyer may take less care in selecting the item, thereby increasing the risk of confusion." *Xtreme Lashes, LLC*, 576 F.3d at 231. Defendants deliberately emphasize the bargain aspect of their services above all else.  *See* Ex. 8; Ex. 29.  For example, Defendants' advertisements tout "Free Consultation[s]" and promise that clients will "Pay Nothing Out of Pocket," with the obvious objective being to lower the degree of care potential clients would otherwise exercise when shopping for an attorney.  Ex. 8; Ex. 29.

But on top of that, potential clients in this situation are seeking legal representation at a time when they are dealing with the stressful aftermath of an accident, likely with

injury to themselves or their loved ones. *See, e.g.*, Ex. 4 and 31 at 2:2-10 (█████████

████████████████████████████████████████); Ex. 6 and 34 (█████████

████████████████████████████████████████).   As the State

Bar of Texas recognized when addressing its prohibition on certain lawyer solicitations

and communications, "[t]he person, who may already feel overwhelmed by the

circumstances giving rise to the need for legal services, may find it difficult to fully

evaluate all available alternatives with reasoned judgment and appropriate self-interest . . . ."

Tex. Disciplinary Rules of Prof'l Conduct R. 7.03 cmt. 3.[7]

The unique circumstances in which these potential clients are seeking out

representation, combined with Defendants' emphasis on the "free" nature of their services,

weighs in favor of a finding of a likelihood of confusion.

**B.  Element two: Defendants' infringement irreparably harms Sibrian.**

In 2020, the Lanham Act was amended to codify "a rebuttable presumption of

irreparable harm . . . upon a finding of likelihood of success on the merits."  Lanham Act

§ 34(a), 15 U.S.C.A. § 1116(a); Pub. L. No. 116-260, § 226(a), 134 Stat. 1182 (December

27, 2020); *see also Whirlpool Corp. v. Shenzhen Sanlida Elec. Tech. Co., Ltd.*, 80 F.4th

536, 546 (5th Cir. 2023) (discussing the 2020 amendments to the Lanham Act), *cert. denied*

*sub nom. Shenzen Sanlida Elec. Tech. Co., Ltd. v. Whirlpool Corp.*, 144 S. Ct. 807 (2024).

Indeed, the Fifth Circuit recognized even before the 2020 amendments that "there seems

little doubt that money damages are 'inadequate' to compensate [the owner] for continuing

---

[7] That Defendants may not be subject to these ethical rules because they are not providing legal services,
per se, only heightens the need for a preliminary injunction.

acts of [an infringer]." *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 627 (5th Cir. 2013) (citations omitted) (alterations in original).

Monetary relief is inadequate because damages cannot be calculated with precision at this juncture, as Defendants' objections to Sibrian's discovery requests make clear:

- "Defendants further respond that they have no way to track revenues from case leads based on Defendants' purchase or search of the alleged Sibrian Marks" Ex. 35 (Req. No. 10).

- "Defendants respond that it is not possible to retrieve" the requested "[d]ocuments sufficient to show each referral [Defendants] made to an attorney based on an advertisement that was triggered by a search for SIBRIAN Marks." *Id.* (Req. No. 12); *see also id.* (Req. No. 13) (similar).

Monetary relief is also inadequate because Sibrian cannot control the quality or nature of Defendants' services, much less the quality or nature of the services of third parties to which Defendants refer Sibrian's potential clients. *See Quantum Fitness Corp. v. Quantum Lifestyle Ctrs., L.L.C.*, 83 F. Supp. 2d 810, 831 (S.D. Tex. 1999) ("When a likelihood of confusion exists, the plaintiff's lack of control over the quality of the defendant's goods or services constitutes an immediate and irreparable injury."). Nor is there any way for Sibrian to prove what results she may have obtained for these clients, had they successfully contacted Sibrian for representation This element therefore supports granting the preliminary injunction.

### C. Element three: the irreparable harm to Sibrian outweighs any hardship to Defendants.

This element requires the Court to engage in a traditional balancing test setting Plaintiffs' irreparable harm against Defendants' hardship. *Sirius Computer Sols., Inc. v. Sparks*, 138 F. Supp. 3d 821, 842 (W.D. Tex. 2015). Harms which "are pecuniary in nature"

are "presumptively reparable." *Whirlpool Corp.*, 80 F.4th at 546 (citing *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011)).

Here, the balance of the potential injuries heavily favors granting an injunction. Denying injunctive relief would obviously harm Sibrian for the reasons stated above, Section IV.B.  By contrast, any harm an injunction would impose on Defendants would be negligible since Defendants could continue operating through legal means with minimal effort and potentially *lower* overhead expenses (*e.g.*, by ceasing their purchases of the SIBRIAN Marks).  Defendants' only hardship under an injunction would be the burden of having to earn its own business, rather than continuing to steal it from Sibrian.  Defendants have no right to use Sibrian's Marks in the way they have been, so their burden is in no way undue. This element therefore weighs in Sibrian's favor.

### D.  Element four: granting an injunction would serve the public interest.

As an initial matter, "[t]he public interest is always served by requiring compliance with Congressional statutes such as the Lanham Act and by enjoining the use of infringing marks." *Quantum Fitness Corp. v. Quantum LifeStyle Centers, L.L.C.*, 83 F. Supp. 2d 810, 832 (S.D. Tex. 1999).  Thus, protecting Sibrian's Marks will not disserve the public interest. Instead, if the Court does not grant injunctive relief, the public harm and confusion will continue.

Here, the nature of the services at issue creates a particularly strong need for protection from Defendants' misleading actions.  Deliberately confusing personal injury victims or their close family and friends in their time of need cuts against the very heart of the Texas Disciplinary Rules of Professional Conduct regarding advertisements.  *See* Tex.

– 23 –

Disciplinary Rules Prof'l Conduct R. 7.01(a) ("A lawyer shall not make or sponsor a false or misleading communication about the . . . services of a lawyer or law firm."); *id.* 7.03 (prohibiting lawyers from "solicit[ing] . . . through regulated telephone, social media, or other electronic contact, professional employment from a non-client" all but a few classes of individuals); *id.* 7.03 cmt. 3 (identifying the vulnerability of individuals seeking legal services). Defendants—who, conveniently, because they are not acting as lawyers, are not subject to the Disciplinary Rules—are nonetheless "operating in a moral gray area" and need to be stopped. Dkt. 25 at 1-2. The public interest in this case therefore compels injunctive relief.

## SECURITY

Under Rule 65(c), the party seeking injunctive relief must "give[] security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). In determining the bond amount, the Court may consider the strength of the party's likelihood of success on the merits and the opposing party's potential loss if the injunction is granted. *See Petro Franchise Sys., LLC v. All Am. Properties, Inc.*, 607 F. Supp. 2d 781, 801 (W.D. Tex. 2009) (concluding that a "relatively low bond amount" was appropriate). Here, Sibrian has shown a substantial likelihood of success on the merits and that Defendants will only suffer minimal loss if the injunction is granted. Accordingly, Sibrian is willing to post a bond, but believes that a modest bond amount is appropriate.

## CONCLUSION

For these reasons, Sibrian requests that this Court enter all relief that is just and

proper, grant the application, and enter a preliminary injunction ordering as follows:

- Prohibiting Defendants from using the SIBRIAN Marks in its advertising campaigns, including the purchase of search term keywords;

- Prohibiting Defendants from using Hilda Sibrian's name or variations thereof in its advertising campaigns, including the purchase of search term keywords; and

- Requiring Defendants to recall from all trade, distribution, and advertising channels, any advertisements being placed in connection with the SIBRIAN Marks.

Dated:  August 9, 2024                    Respectfully submitted,

*/s/ Jason S. McManis*
Joseph Y. Ahmad
State Bar No.: 00941100
Federal ID: 11604
Jason S. McManis
State Bar No. 24088032
Federal ID: 3138185
Jordan Warshauer
State Bar No. 24086613
Federal ID: 2994699
Spencer Packard
State Bar No. 24125823
Federal ID: 3737413
joeahmad@azalaw.com
jmcmanis@azalaw.com
jwarshauer@azalaw.com
spackard@azalaw.com
1221 McKinney, Suite 2500
Houston, Texas 77010
Phone: 713.655.1101
Fax: 713.655.0062

**ATTORNEYS FOR PLAINTIFF
THE LAW OFFICES OF HILDA L.
SIBRIAN, P.C. AND HILDA L.
SIBRIAN**

## CERTIFICATE OF SERVICE

I hereby certify that on August 9, 2024, a true and correct copy of the above and foregoing document was served on all counsel of record by email.

*/s/ Spencer Packard*
Spencer Packard

## CERTIFICATE OF CONFERENCE

I hereby certify that on July 29, 2024, counsel for the parties discussed settlement options and did not reach a resolution. Defendants maintain their opposition to entry of a preliminary injunction and Plaintiffs maintain their belief that an injunction is necessary and proper.

*/s/ Spencer Packard*
Spencer Packard