# EXHIBIT D

# LYNN PINKER HURST SCHWEGMANN

CHRIS SCHWEGMANN  
*Partner*

D 214 981 3835  
F 214 981 3839  
cjs@lynnllp.com

Lynn Pinker Hurst & Schwegmann, LLP  
2100 Ross Avenue  
Suite 2700  
Dallas, Texas 75201  
lynnllp.com

October 31, 2023

**Via E-Mail**: kevin.yankowsky@nortonrosefulbright.com  
Kevin Yankowsky  
NORTON ROSE FULBRIGHT US LLP  
1301 McKinney, Suite 5100  
Houston, Texas 77010

**Re: Response Letter Regarding the Marketing Practices of Quintessa LLC**

Dear Kevin:

My firm has been retained to represent Quintessa LLC ("Quintessa") concerning the allegations in your Cease and Desist email, dated October 10, 2023. In your email, you claim that Quintessa's marketing practices are deceptive misleading. Quintessa disagrees with your analysis for the reasons stated below. Quintessa's online marketing practices are well within the bounds of the company's legal obligations.

As an initial matter, it is widely accepted – by courts in almost every jurisdiction – that bidding on a competitor's trademark as a search engine keyword does not violate the Lanham Act or any state law corollaries as a matter of law, especially where (as here) the ad is clearly marked. For the reasons discussed below, Sibrian's claims and legal threats are unfounded, and Quintessa rejects Sibrian's demands.

1. **Use of a Competitor's Mark as a Search Engine Advertising Keyword Does Not Infringe Any Trademark Rights as a Matter of Law.**

   Your letter wrongfully implies that Quintessa's bidding on Sibrian's trademark is somehow improper or unlawful However, it is well-established that the mere purchase of a competitor's trademark as a keyword for search engine advertising is not actionable as a matter of law. *See Tempur-Pedic N. Am., LLC v. Mattress Firm, Inc.*, CV H-17-1068, 2017 WL 2957912, at *7–8 (S.D. Tex. July 11, 2017) ("The mere purchase of AdWords alone, without directing a consumer to a potentially confusing web page, is not sufficient for a claim of trademark infringement."); *Coll. Network, Inc. v. Moore Educ. Publishers, Inc.*, 378 Fed. Appx. 403, 414 (5th Cir. 2010) (clarifying that the purchase of a competitor's brand-name as a search-engine keyword to summon sponsored-link advertising "does not compel a finding of likelihood of confusion under the relevant Fifth Circuit law"); *Alzheimer's Disease & Related Disorders Ass'n, Inc. v. Alzheimer's Found. of Am., Inc.*, 307 F. Supp. 3d 260 (S.D.N.Y. 2018) (noting that "[v]irtually no court has held that, on its own, a defendant's purchase of a plaintiff's mark as a keyword term is sufficient for liability") (citing *1–800 Contacts, Inc. v. Lens.com, Inc.*, 755 F.Supp.2d 1151, 1174 (D.

Mr. Yankowsky
October 31, 2023
Page 2

Utah 2010), aff'd in part, rev'd in part on other grounds, 722 F.3d 1229 (10th Cir. 2013); *Gen. Steel Domestic Sales, LLC v. Chumley*, No. 10-CV-1398, 2013 WL 1900562, at *10 (D. Colo. May 7, 2013), aff'd, 627 Fed.Appx. 682 (10th Cir. 2015); *Hearts on Fire Co., LLC v. Blue Nile, Inc.*, 603 F.Supp.2d 274, 285 (D. Mass. 2009)). *See also* 5 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 25A:7 (5th ed.) ("Almost all District Courts have found that no likelihood of confusion was caused by the purchase of keywords alone.").

Additionally, Quintessa's search engine ads are clearly marked as ads, and there is no reason to believe that they have or might cause any consumer confusion. Quintessa's ads does not contain any reference to Sibrian or her firm. Quintessa has reviewed the image of the Car Accident Helpline ad that you attached to your letter. It appears that your example ad was the product of a Google glitch which caused the display to show ad extensions that are not intended to be a part of the ad. The glitch is also evident from the fact that there is no headline for the ad in your example. Below is an accurate representation of how Quintessa's advertisements normally appear for the Car Accident Helpline:



In addition to being labeled as a "sponsored" ad, the text of Quintessa's ad makes clear that the ad is not for any specific lawyer or law firm. The ad also includes a specific disclaimer that the Car Accident Helpline is a "Third Party Intake Not a Firm." These factors are sufficient to dispel any likelihood of confusion. As the Fifth Circuit recently

Mr. Yankowsky
October 31, 2023
Page 3

held, "distraction is insufficient" to support a claim for trademark infringement. *Jim S. Adler, P.C. v. McNeil Consultants*, *L.L.C.*, 10 F.4th 422, 428 (5th Cir. 2021).

Since the *Adler* opinion, at least two district courts have favorably cited *Adler* in dismissing claims for trademark infringement based on keyword bidding where, as here, it was clear from the context that the allegedly infringing ad was, in fact, a third party ad. *See Penn Eng'g & Mfg. Corp. v. Peninsula Components, Inc.*, 2022 WL 3647817, at *4-5 (E.D. Pa. Aug. 24, 2022); *1-800 Contacts, Inc. v. JAND, Inc.*, No. 21-cv-6966, 2022 WL 2316181, at *6 (S.D.N.Y. June 27, 2022) (granting defendant's motion to dismiss where defendant bid on plaintiff's trademarks but the resulting ad was clearly marked as the defendant's ad and did not contain the plaintiff's mark or any confusingly similar terms); *accord*. *RBG Plastic, LLC v. Webstaurant Store*, No. 1:18-CV-05192, 2023 WL 2683170. *6 (N.D. Ill. Mar. 29, 2023) (dismissing plaintiff's trademark infringement claim to the extent that it was based solely on defendant's purchase of plaintiff's mark as a search engine keyword).

2. **The Legal and Ethical Acceptability of Bidding on a Competitor's Mark is Evident from the Number of Other Competitors Bidding on Sibrian's Mark.**

Bidding on competitor's marks is both common and widespread, particularly in the field of personal injury law. Just a few searches for Sibrian's marks shows that competitive bidding on Sibrian's marks is ubiquitous in search engine marketing:




Mr. Yankowsky
October 31, 2023
Page 4




Mr. Yankowsky
October 31, 2023
Page 5

Even Dallas County Judge, Clay Jenkins, is bidding on Sibrian's marks:



The fact that numerous competitors, in addition to Quintessa, are bidding on Sibrian's marks is not surprising, given that the practice is perfectly permissible under well-established law. In fact, the Ethics Committee recognized the difference between this fair competition and intent to deceive or confuse when it examined this same situation, *i.e.* one lawyer ("Lawyer A") purchasing his competitor's name ("Lawyer B") as a keyword search term when both attorneys are in close competition with similar practices. *See* Enclosure 1 (PEC Opinion 661) at 1. In the opinion, the Ethics Committee recognized that this practice will cause the Lawyer A's advertisement to appear to the side of or above the search results for Lawyer B. The Ethics Committee examined and discussed this practice in detail and found that "given the general use by all sorts of businesses of names of competing businesses as keywords in search-engine advertising, such use by Texas lawyers in their advertising is **neither dishonest nor fraudulent nor deceitful and does not involve misrepresentation**." *Id*. at 3 (emphasis added).

In sum, Quintessa's online advertising practices are legally sound. Sibrian's saber-rattling over Quintessa's widely-accepted internet marketing practices is inappropriate and not well taken. If you wish to discuss further, please do not hesitate to contact me.

Mr. Yankowsky
October 31, 2023
Page 6

Thank you,

Christopher J. Schwegmann

CJS/RLA

cc: Rebecca L. Adams, Esq. (*of the Firm*)

Enclosure:
   (1) PEC Opinion 661

THE PROFESSIONAL ETHICS COMMITTEE
FOR THE STATE BAR OF TEXAS
Opinion No. 661

July 2016

**QUESTION PRESENTED**

Does a lawyer violate the Texas Disciplinary Rules of Professional Conduct by using the name of a competing lawyer or law firm as a keyword in the implementation of an advertising service offered by a major search-engine company?

**STATEMENT OF FACTS**

Recognizing that many potential clients search for a lawyer by using internet search engines, Lawyer A uses various search-engine optimization techniques to try to ensure that his name appears on the first page of the search results obtained when a potential client uses a search engine to seek a lawyer. One way Lawyer A seeks to achieve this goal is by participating in internet search-based advertising programs offered by search engines that are in widespread use by many types of businesses.

These search-based advertising programs allow a business to select specific words or phrases ("keywords") that will cause the business's advertisement to pop up in the search results of someone using that keyword in a search. The advertiser does not purchase exclusive rights to specific keywords; the same keywords can be used by a number of advertisers.

Lawyer B is a competing lawyer in Lawyer A's town. Lawyer B's area of practice is similar to Lawyer A's. Lawyer A and Lawyer B have never been law partners or engaged in joint representation in any case.

One of the keywords selected by Lawyer A is the name of Lawyer B. Lawyer A's keyword selection causes Lawyer A's name and a link to his website to be displayed on the search engine's search results page any time an internet user searches for Lawyer B using the search engine. Lawyer A's advertisement will appear to the side of or above the search results in an area designated for "ads" or "sponsored links." In addition to displaying Lawyer A's name and a link to Lawyer A's website, the ad or sponsored link may contain additional text concerning Lawyer A and his practice. Usually Lawyer B's name would also be listed in the search results. Moreover, if Lawyer B had also purchased similar advertising services from the search engine and had used his own name as a keyword, Lawyer B's name would also be listed in the ad or sponsored link section as well as in the regular search results when Lawyer B's name was used by a potential client as a search term.

1

Lawyer A's keyword advertisement or sponsored link does not indicate whether or not Lawyer A and Lawyer B are affiliated. Lawyer B did not authorize Lawyer A to use Lawyer B's name in connection with Lawyer A's keyword advertisement.

**DISCUSSION**

Advertising, including internet advertising, is addressed in Part VII of the Texas Disciplinary Rules of Professional Conduct. The Texas Disciplinary Rules do not specifically address the question of whether it is permissible for a lawyer to use a competitor's name to enhance the lawyer's internet advertising. However, several provisions of the Texas Disciplinary Rules must be considered with respect to this question.

Rule 7.01(d) states that "[a] lawyer shall not hold himself or herself out as being a partner, shareholder, or associate with one or more other lawyers unless they are in fact partners, shareholders, or associates."

Rule 7.02(a) prohibits a lawyer from making or sponsoring "a false or misleading communication about the qualifications or the services of any lawyer or firm." A communication is false or misleading if it "contains a material misrepresentation of fact or law, or omits a fact necessary to make the statement considered as a whole not materially misleading[.]" Rule 7.02(a)(1). Comment 3 to Rule 7.02 explains the standard set forth in Rule 7.02(a)(1) as follows:

> "Sub-paragraph (a)(1) recognizes that statements can be misleading both by what they contain and what they leave out. Statements that are false or misleading for either reason are prohibited. A truthful statement is misleading if it omits a fact necessary to make the lawyer's communication considered as a whole not materially misleading. A truthful statement is also misleading if there is a substantial likelihood that it will lead a reasonable person to formulate a specific conclusion about the lawyer or the lawyer's services for which there is no reasonable factual foundation."

Under these Rules, if Lawyer A's use of Lawyer B's name as a keyword in search-engine advertising results in an advertisement that holds out Lawyer A to be a shareholder, partner, or associate of Lawyer B, then Lawyer A's use of Lawyer B's name would violate Rule 7.01(d). Furthermore, if such use of Lawyer B's name would lead a reasonable person to believe that Lawyer A and Lawyer B are associated in some way, then the use of Lawyer B's name as a keyword would be a misleading communication in violation of Rule 7.02(a).

In the opinion of this Committee, the use of a competitor's name as a keyword in the factual circumstances here considered would not in normal circumstances violate either Rule 7.01(d) or Rule 7.02(a). The advertisement that results from the use of Lawyer B's name does not state that Lawyer A and Lawyer B are partners, shareholders, or associates of each other. Moreover, since a person familiar enough with the internet to use a search engine to seek a lawyer should be aware that there are advertisements presented on web pages showing search results, it appears highly unlikely that a reasonable person using an internet search engine would be misled into thinking

2

that every search result indicates that a lawyer shown in the list of search results has some type of relationship with the lawyer whose name was used in the search. Compare *Habush v. Cannon,* 828 N.W.2d 876 (Wis. Ct. App. 2013) (finding no violation of Wisconsin right-of-privacy statute when one law firm used the name of a competing law firm as a keyword in search-engine advertising).

In addition to Rules 7.01(d) and 7.02(a), Rule 8.04(a)(3) must also be considered. Rule 8.04(a)(3) prohibits a lawyer from engaging in conduct "involving dishonesty, fraud, deceit or misrepresentation." In the opinion of the Committee, given the general use by all sorts of businesses of names of competing businesses as keywords in search-engine advertising, such use by Texas lawyers in their advertising is neither dishonest nor fraudulent nor deceitful and does not involve misrepresentation. Thus such use of a competitor's name in internet search-engine advertising is not a violation of Rule 8.04(a)(3). In reaching this conclusion, this Committee has considered but does not concur with 2010 Formal Ethics Opinion 14 of the Ethics Committee of the North Carolina State Bar (April 27, 2012) (ruling that a lawyer's use of a competitor's name as a keyword in a search-engine advertising program violates the equivalent of Texas Disciplinary Rule 8.04(a)(3) because such use constitutes "conduct involving dishonesty" in that the conduct shows "a lack of fairness or straightforwardness").

It should be noted that this opinion addresses only whether the use of a competitor's name in internet search-engine advertising programs violates the Texas Disciplinary Rules of Professional Conduct. Although such use of a competitor's name as a keyword in advertising programs does not in the opinion of the Committee involve a violation of the Texas Disciplinary Rules, a Texas lawyer's participation in such an advertising program must comply with the other provisions of the Texas Disciplinary Rules applicable to advertising, in particular Disciplinary Rule 7.04 on advertisements in the public media. Moreover, depending on the circumstances, a Texas lawyer advertising through keywords on internet search engines may be subject to other requirements or prohibitions imposed by federal or state law or by professional ethics rules of other jurisdictions.

**CONCLUSION**

A lawyer does not violate the Texas Disciplinary Rules of Professional Conduct by simply using the name of a competing lawyer or law firm as a keyword in the implementation of an advertising service offered by a major search-engine company. The lawyer's statements included in this advertising program must not contain false or misleading communications and must comply in all respects with applicable rules on lawyer advertising.

3