IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| THE LAW OFFICES OF HILDA L. SIBRIAN, P.C. and HILDA L. SIBRIAN, | § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | Civil Action No. 4:23-cv-04643 |
| MCNEIL CONSULTANTS, LLC D/B/A ACCIDENT INJURY LEGAL CENTER, QUINTESSA MARKETING, LLC D/B/A ACCIDENT INJURY LEGAL CENTER, and LAUREN MINGEE, | § § § § § § § | |
| *Defendants*. | § | |

---

## PLAINTIFFS' REPLY IN SUPPORT OF ITS
## MOTION FOR PRELIMINARY INJUNCTION

---

Plaintiffs The Law Offices of Hilda L. Sibrian, P.C. and Hilda L. Sibrian ("Sibrian") file this Reply in support of their Motion for Preliminary Injunction and would show the Court as follows:

TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................. 1

II.  ARGUMENT ....................................................................................................... 1

     A.   The evidence is clear: Sibrian is substantially likely to succeed on the merits. .......... 1

          1)   Defendants offer no substantive response on digits 1 and 2. ............................... 2

          2)   Defendants effectively concede digits 3 through 5. ............................................ 3

          3)   Defendants' intent (digit 6) weighs heavily in favor of Sibrian. ........................... 4

          4)   Defendants cannot refute the evidence of actual confusion (digit 7) ..................... 7

          5)   It is well-established that accident injury victims are presumed to be
               unsophisticated consumers (digit 8) .................................................................. 10

     B.   Defendants do not credibly dispute that irreparable harm exists. .............................. 11

          1)   The alleged "delay" does not rebut the presumption of irreparable harm. ........... 11

          2)   Even if the Court considers delay, it is not undue. ............................................. 12

          3)   Defendants' other arguments also fail to rebut the presumption. ........................ 13

          4)   Sibrian has presented evidence of irreparable harm. ......................................... 15

     C.   Balance of the Hardships and the Public Interest ...................................................... 15

III. CONCLUSION ................................................................................................... 16

TABLE OF AUTHORITIES

## Cases

*1-800 Contacts, Inc. v. JAND, Inc.*,
    No. 21-CV-6966, 2022 WL 2316181 (S.D.N.Y. June 27, 2022) ........................................ 10

*Am. Century Proprietary Hldgs., Inc. v. Am. Century Cas. Co.*,
    295 Fed. Appx. 630 (5th Cir. 2008) .................................................................................. 2, 8

*Baker v. DeShong*,
    821 F.3d 620 (5th Cir. 2016) ................................................................................................. 3

*Bd. of Supervisors for Louisiana State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*,
    550 F.3d 465 (5th Cir. 2008) .............................................................................................. 11

*Coll. Network, Inc. v. Moore Educ. Publishers, Inc.*,
    378 F. App'x 403 (5th Cir. 2010) ......................................................................................... 2

*Concordia Partners, LLC v. Pick.*,
    No. 2:14-cv-009, 2015 WL 4065243, at *9 (D. Me. July 2, 2015) ..................................... 14

*Deerfield Medical Center v. City of Deerfield Beach*,
    661 F.2d 328 (5th Cir. 1981) .............................................................................................. 15

*Elvis Presley Enterprises, Inc. v. Capece*,
    141 F.3d 188 (5th Cir. 1998) ................................................................................................. 9

*Fla. Bar v. Went For It, Inc.*,
    515 U.S. 618 (1995) ............................................................................................................ 10

*Jim S. Adler, P.C. v. McNeil Consultants, L.L.C.*,
    10 F.4th 422 (5th Cir. 2021) ............................................................................................. 2, 9

*Jim S. Adler, P.C. v. McNeil Consultants, LLC*,
    No. 3:19-CV-2025-K-BN, 2023 WL 5600128 (N.D. Tex. July 27, 2023) ............... 2, 3, 4, 6

*Lerner & Rowe, PC v. Brown Engstrand & Shely LLC, et al.*,
    No. 2:14-cv-009, 2015 WL 4065243 (D. Me. July 2, 2015) ................................................ 9

*Ohralik v. Ohio State Bar Ass'n*
    436 U.S. 447 (1978) ............................................................................................................ 10

*Oreck Corp. v. U.S. Floor Sys., Inc.*,
    803 F.2d 166 (5th Cir. 1986) .............................................................................................. 10

*Quantum Fitness Corp. v. Quantum LifeStyle Ctrs., L.L.C.*,
    83 F. Supp. 2d 810 (S.D. Tex. 1999) ................................................................. 2

*Scott Fetzer Co. v. House of Vacuums Inc.*,
    381 F.3d 477 (5th Cir. 2004) .............................................................................. 3

*Scrum All., Inc. v. Scrum, Inc.*,
    No. 4:20-CV-00227, 2020 WL 4016110 (E.D. Tex. July 16, 2020) ................... 12

*Solofill, LLC v. Rivera*,
    2017 WL 514589 (S.D. Tex. Feb. 8, 2017) ....................................................... 11

*Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*,
    851 F.3d 440 (5th Cir. 2017) ....................................................... 4, 5, 7, 8

*Vans, Inc. v. Walmart, Inc.*,
    No. 8:21-CV-01876-DOC-KES, 2022 WL 1601530 (C.D. Cal. Mar. 31, 2022) ............... 13

*Whirlpool Corp. v. Shenzhen Sanlida Elec. Tech. Co., Ltd.*,
    80 F.4th 536 (5th Cir. 2023) ............................................................................ 11

*Xtreme Lashes, LLC v. Xtended Beauty, Inc.*,
    576 F.3d 221 (5th Cir. 2009) ....................................................... 3, 6, 7, 10

**Statutes**

15 U.S.C. § 1116(a) ....................................................................................... 11

**Rules**

Fed. R. Evid. 702 ............................................................................................. 7

## I.     INTRODUCTION

In their response, Defendants effectively admit to doing everything Sibrian claims they have done. Instead, they attack by arguing (1) that this Court should be the first in the Fifth Circuit to not apply all eight digits of confusion to a trademark case; (2) that Sibrian's evidence of actual confusion isn't actually evidence of actual confusion (even though their own call scripts acknowledge the common occurrence of initial interest confusion, a viable theory under controlling Fifth Circuit precedent); (3) that Sibrian is small, so there have only been a small number of times she can point to as actual confusion, and that doesn't count (even though the Fifth Circuit has held that even one instance of actual confusion is sufficient to support a finding); and, finally (4) that Sibrian waited too long to seek this relief, so Defendants should get a pass.

None of these arguments hold water. As to the first three, they are unsupported in the Fifth Circuit and when the proper tests are applied, it is evident that the eight digits of confusion demonstrate a likelihood of confusion. Sibrian is substantially likely to succeed on the merits, which carries with it a presumption of irreparable harm. And as to the fourth argument, delay, Defendants' own evidence proves that Sibrian brought this case shortly after she became aware of the unlawful conduct. It doesn't matter that Defendants were getting away with this for years before she knew about it. They began infringing again in earnest in late 2023 and Sibrian immediately brought this suit. Then, upon finally receiving evidence of actual confusion, Sibrian immediately filed this request for a preliminary injunction. There has been no delay.

In short, Sibrian meets all of the requirements for the issuance of a preliminary injunction.

## II.     ARGUMENT

### A.     The evidence is clear: Sibrian is substantially likely to succeed on the merits.

Lacking any real rebuttal, Defendants take the position that 60% of the Fifth Circuit's digits of confusion should be ignored. What Defendants fail to mention, however, is that they have made

this argument previously, and it was explicitly rejected in the parallel case pending in the Northern District of Texas. *Jim S. Adler, P.C. v. McNeil Consultants, LLC*, No. 3:19-CV-2025-K-BN, 2023 WL 5600128, at *1 (N.D. Tex. July 27, 2023), *report and recommendation adopted*, No. 3:19-CV-2025-K-BN, 2023 WL 5604169 (N.D. Tex. Aug. 28, 2023) ("[T]he undersigned will follow Fifth Circuit precedent and consider all the digits, as the Fifth Circuit has instructed it to do.") (citing *Jim S. Adler, P.C. v. McNeil Consultants, L.L.C.*, 10 F.4th 422, 430 (5th Cir. 2021).

Nothing has changed since that decision was handed down; there is no authority in the Fifth Circuit that keyword bidding cases should be given a different test. *See Coll. Network, Inc. v. Moore Educ. Publishers, Inc.*, 378 F. App'x 403, 414 (5th Cir. 2010) (noting the Fifth Circuit "has never adopted" any test limiting the number of relevant digits in keyword cases). And, when the proper legal test is applied, the outcome is clear: four digits weigh heavily in Sibrian's favor, three weigh slightly in Sibrian's favor, and one is (at worst) neutral. "As a general rule, if the likelihood-of-confusion analysis 'is closely balanced, the question should be resolved in favor of the senior user.'" *Am. Century Proprietary Hldgs., Inc. v. Am. Century Cas. Co.*, 295 Fed. Appx. 630, 635 (5th Cir. 2008) (citing *Quantum Fitness Corp. v. Quantum LifeStyle Ctrs., L.L.C.*, 83 F. Supp. 2d 810, 831 (S.D. Tex. 1999)). Here, there is no such close balance.

1)       *Defendants offer no substantive response on digits 1 and 2.*

Setting aside Defendants' legally flawed and previously rejected argument not to consider these digits,[1] Defendants say nothing at all about the strength of the Sibrian Marks or the similarity between what Defendants are using and the Sibrian Marks. Nor could they; their own use of Sibrian's marks evidences their strength. "Quintessa would not bid on the [Sibrian Marks] … if

---

[1] Defendants' argument that the Court should compare the resulting *ads* for Sibrian and Defendants instead of assessing digits 1 and 2 (Resp. at 13-14) is not supported by any authority within the Fifth Circuit.

they were not commercially strong." *Adler*, 2023 WL 5600128, at *6 (finding that the first digit "weighs heavily" in favor of the mark holder). Digit 1, therefore, decidedly favors Sibrian.

As to digit 2, it is undisputed that Defendants are using the precise Sibrian Marks to bid on keywords. Thus, there is more than similarity, there is complete overlap. While that may be true in any keyword bidding case, it. does not suggest Sibrian is unlikely to succeed, it still favors a finding of a likelihood of confusion—at worst, it is neutral. *Id.*

> ### 2)    *Defendants effectively concede digits 3 through 5.*

Like digits 1 and 2, Defendants offer no substantive rebuttal to Sibrian's arguments for digits 3 through 5, choosing instead to rest on the argument that the Court should ignore them. In doing so, Defendants flat out concede that "by definition, close competitors will target identical or nearly identical purchasers and use identical or nearly identical advertising media for identical or nearly identical products or services." Resp. at 14-15; *see also id.* at 15 (admitting that it "is already clear [that] Quintessa and Sibrian are close competitors for personal injury leads").

The authority Defendants rely on to argue these digits should be disregarded in a keyword bidding case is **not a keyword bidding case**. *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477 (5th Cir. 2004), a*brogated in part on other grounds by Baker v. DeShong*, 821 F.3d 620 (5th Cir. 2016); Def. Resp. at 14. In *Fetzer*, the defendant used the plaintiff's mark to identify the plaintiff's goods and services—not to trick accident victims into calling an intake line designed to re-route them from their lawyer of choice to some other lawyer in the name of making a profit. *Id.*

Sibrian is not arguing that the context should be ignored; keyword bidding cases will, like all cases, have unique circumstances. *See Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009) (noting that the digits may weigh differently depending on particular facts and circumstances). But, as set forth in Sibrian's opening brief, digits 3-5 still weigh at least

3

slightly in Sibrian's favor (if not more)—further tipping the scales toward a substantial likelihood of success. *Adler*, 2023 WL 5600128, at *7.

> 3) <u>*Defendants' intent (digit 6) weighs heavily in favor of Sibrian.*</u>

Rather than address digit 6, Defendants hope to shift the playing field, asking the Court to apply the test for willful trademark infringement instead. *See* Resp. at 15 (quoting the standard for willful infringement). The appropriate inquiry, though, "focuses on whether the defendant intended to derive benefits from the reputation of the plaintiff." *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 455 (5th Cir. 2017). That is precisely the purpose of Defendants' scheme. First, Defendants bid on the Sibrian Marks, hoping to benefit from the name and good will of Sibrian in Texas. Ex. 7;[2] Ex. 30. Then, to secure that benefit for themselves, Defendants place vague and misleading "click-to-call" ads to trick consumers into calling their intake line so that they can sell leads for potential clients to other attorneys. Ex. 29. Defendants continue to do this even after being sued in at least three separate cases (from between 2019 and 2020) for the same conduct at issue in this case.[3] *See* Ex. 1 (Interrog. No. 10).

Defendants' internal documents prove they ***do not*** try to dispel confusion when it becomes clear that a caller is asking for Sibrian. For example, the caller in ██████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ In another call, ██████████████████████████████████████████████ ███████████████████████████████████████████████████████████

---

[2] Unless attached to this motion, "Ex. _" references refer to the exhibits attached to Sibrian's Opening Brief.

[3] At least one of those cases settled, while another (Adler) is set for trial this year.

███████████████████████████████████████████████████████████████

███    In both instances, Defendants' employees attempted to collect as much information as possible to maximize their chances of diverting a client who wanted Sibrian, to some other lawyer. Ex. 31; Ex. 33. That's the intended benefit, and it is derived directly from Sibrian's reputation. *See Streamline*, 851 F.3d at 455.

In fact, the new call script produced by Defendants with their response confirms they specifically plan to benefit from a potential client's confusion about reaching an "intake department" when they were looking for a specific lawyer (Ex. A-1 to Defs. Resp. at 23-24):



While Defendants may point to the statement that it is "imperative" to tell the potential client who they are affiliated with, that's not how they initially answer the phone, which includes no identification at all. Ex. 3. And claiming to be a "third-party intake representative" (if they even say that) does nothing to dispel confusion.[4] It would surprise no one if a law firm used a third party

---

[4] The script was created, unsurprisingly, after Defendants had been sued for trademark infringement, likely so that it could be touted in situations like this.

to run its intake department; Defendants count on that. If Defendants truly wanted to identify themselves in plain terms, they'd use their own name—Quintessa.

Defendants' attempt to counter this damning evidence by arguing first that they have a "good faith basis for keyword bidding." Resp. at 17–19. As the Northern District of Texas observed, however, that "sidesteps the issue" of "whether an intent to confuse was part of its 'scheme,' which included more than just bidding on" the Sibrian Marks. *Adler*, 2023 WL 5600128 at *7. "The authority that Quintessa submits for the proposition that bidding, without more, is insufficient for liability are inapposite to determining whether Quintessa had an intent to confuse."[5] *Id.*

Reliance on the Texas Ethics Committee opinion is misplaced for the same reason—Sibrian is not arguing that Defendants are merely bidding on keywords. Rather, Sibrian's case is based on Defendants' bidding on keywords *plus* placing of non-descript "click-to-call" advertisements in a way that "would lead a reasonable person to believe" that they are reaching out to Sibrian, and not Defendants' referral service. *Xtreme Lashes*, 576 F.3d at 228. This is not condoned by the Texas Ethics Committee. *See* Opinion No. 661 at 2. Moreover, the opinion expressly recognizes that "depending on the circumstances … advertising through keywords on internet search engines may be subject to other requirements or prohibitions imposed by federal or state law." *Id.*

Faced with these nearly identical facts—same Defendants, same scheme, same customers, same confusion—the *Adler* court took every inference in Defendants' favor and still found that this factor weighs in favor of the mark holder. *Adler*, 2023 WL 5600128 at *7. Here, the Court is

---

[5] The authority cited by Defendants in this case is, by and large, the same authority disregarded by the Northern District of Texas in the *Adler* case, including McCarthy on Trademarks and Unfair Competition, the Texas Ethics Committee Opinion, *Alzheimer's Disease* and *Mary Kay*. *See* Ex. 46.

not required to take any inference in Defendants' favor. Digit 6 heavily supports a finding of likelihood of confusion.

4)    *Defendants cannot refute the evidence of actual confusion (digit 7).*

Defendants rely on a speculative expert declaration and throw a host of percentages in their response to distract from the evidence that potential clients were, in fact, confused. Resp. at 19–22. It is worth re-setting the framework: the bar for proving actual confusion is "low"—"very little proof of actual confusion" is required "to prove likelihood of confusion." *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 457 (5th Cir. 2017). In fact, even "a single known incident of actual confusion has been found to be sufficient evidence to support the district court's finding of actual confusion." *Id.* Moreover, now that Sibrian has provided proof of actual confusion, Defendants must provide "an almost overwhelming amount of proof … to refute [it]." *Xtreme Lashes, LLC*, 576 F.3d at 229. Defendants do not meet that standard.

**Defendants' Expert Declaration.** Hoping to gloss over the evidence cited in Sibrian's opening brief, Defendants rely on an expert declaration from Bernard Jansen. *See* Ex. H to Resp. Notably, Dr. Jansen conducted no survey of potential clients to measure any levels of confusion; he spoke to none of the confused potential clients identified in Sibrian's opening brief; and he offers nothing in the way of personal knowledge to support his speculative opinions about the state of mind (*i.e.*, level of confusion, or lack thereof) of the searchers for the Sibrian Marks. *See id.* Mr. Jansen's personal opinions as to what he would consider the intent to be behind certain queries, without knowing the actual circumstances in which each potential client was searching for the Sibrian Marks, is unhelpful. *See* Fed. R. Evid. 702.

**Defendants' Misleading Percentages.** Defendants also recite a host of self-serving percentages of impressions, clicks, and the █ calls with mentions of Sibrian's name to argue that any confusion is *de minimis*. But Defendants cite no hard-and-fast rule about the number of

7

confused consumers necessary to prove a **likelihood** of confusion; nor could they, because the

Fifth Circuit has held that even a single incident can support such a finding. *Streamline*, 851 F.3d

at 457. In fact, the Fifth Circuit has rejected an argument that infringement was *de minimis* even

when there were only six incidents of actual confusion over a six-to-ten year period. *Am. Century*

*Proprietary Hldgs., Inc.*, 295 Fed. Appx. at 638 (finding even under those circumstances, digit 7

weighed in favor of the plaintiff).

      Moreover, Defendants' cited percentages raise more questions than they purport to answer.

For example, how many of the initial impressions confused a user with Defendants' advertisement

at the top of the page, such that the confused potential client searched again for Sibrian using a

different search, only to again be presented with one of Defendants' misleading ads (falsely

inflating the number of impressions)? How many of the ▮▮ callers were confused into believing

they had reached Sibrian's office—because they had searched for Sibrian and clicked on the top

result—and didn't mention Sibrian's name in the phone call, thus evading Defendants' narrow

search terms for production in this matter? *See* Ex. A-4 to Defs. Resp. Defendants, who must

present "an overwhelming amount of proof" to refute the clear evidence of actual confusion, only

present their cherry-picked percentages, failing to carry their burden on this key issue.

      Specifically, Defendants choose a deliberately favorable statistical framework to

purposefully come up with a low number. To illustrate how the choice of framework affects the

analytical outcome, suppose the correct analysis is the percentage of callers (potential clients who

dialed Defendants intake department) compared to the percentage of people who clicked the ads,

before realizing they made a mistake. Overall, ▮▮**% of potential clients who searched for a**

**Sibrian Mark and then clicked on of Defendants' misleading advertisements placed a call to**

**Defendants**, instead of Sibrian. Viewed through this lens—a lens which Sibrian submits is more appropriate—confusion hardly seems *de minimis*.[6]

     ***Initial Interest Confusion.*** Defendants' statistical analysis and emphasis on actual client leads both overlook this Circuit's application of the doctrine of initial interest confusion. "Actual confusion that is later dissipated by further inspection … is relevant to a determination of a likelihood of confusion." *Elvis Presley Enterprises, Inc. v. Capece*, 141 F.3d 188, 204 (5th Cir. 1998). "Infringement can be based upon confusion that creates initial consumer interest, even though no actual sale is finally completed as a result of the confusion." *Id.* (internal quotation omitted). Defendants' intake script, even to this day, acknowledges and embraces that initial interest confusion as part of their scheme. ████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████ In other words, Defendants incorporate the very strategy that *Elvis Presley* held supported a finding of actual confusion: "Once in the door, the confusion has succeeded because some [potential clients] may stay, despite realizing [Defendants] ha[ve] no relationship with [Sibrian]." 141 F.3d at 204. *See also Jim S. Adler, P.C. v. McNeil Consultants, L.L.C.*, 10 F.4th 422, 429 (5th Cir. 2021) (considering that these same Defendants did not identify themselves on a call prompted by a keyword search of a competitor's mark as evidence of initial interest confusion).

---

[6] *Lerner & Rowe* (an unpublished opinion applying Ninth Circuit law from before the Lanham Act amendment establishing the presumption) does not compel a different result. *Lerner & Rowe, PC v. Brown Engstrand & Shely LLC, et al.*, No. 2:14-cv-009, 2015 WL 4065243 (D. Me. July 2, 2015). There, the defendant's ad was clearly labeled with the defendant's name (*id.* at *11)—quite different from this context, where Defendants' name does not appear at all in their advertisement and Defendants only identify themselves on the phone as an "intake" or "admissions department." Ex. 3; Ex. 29; Ex. 34.

The evidence of actual confusion here is clear. Ex. 2; Ex. 4–6; Ex. 31–34. Defendants have not provided any credible evidence refuting it, when they are required to provide "an almost overwhelming amount of proof" to do so. *Xtreme Lashes, LLC*, 576 F.3d at 229. This factor weighs heavily in favor of a likelihood of confusion.

> 5)  *It is well-established that accident injury victims are presumed to be unsophisticated consumers (digit 8).*

Defendants ask this Court to ignore Supreme Court precedent establishing that accident injury victims are, by and large, unsophisticated when it comes to selecting a lawyer.  In *Ohralik v. Ohio State Bar Ass'n*, the Supreme Court acknowledged the need to protect "unsophisticated, injured, or distressed lay person[s]" whose "very plight" makes them "more vulnerable to influence" from deceptive forms of attorney advertising. 436 U.S. 447, 465 (1978); *see also Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 625 (1995) (crediting petitioner's argument concerning the "special vulnerability" of "victims or their families"). This is not merely conjecture; Sibrian has presented the Court with evidence of this— ████████████████████████████████ ████████████████████████████████████

Defendants, however, ignore that evidence and instead ask the Court to apply cases that analyzed keyword ads that led consumers to a clearly labeled website (*1-800 Contacts, Inc. v. JAND, Inc.*, No. 21-CV-6966, 2022 WL 2316181 (S.D.N.Y. June 27, 2022)), or cases discussing how purchasers "for professional or institutional purposes at a high cost" are "virtually certain to be informed, deliberative buyers." *Oreck Corp. v. U.S. Floor Sys., Inc.*, 803 F.2d 166, 173 (5th Cir. 1986). These cases are readily distinguishable. First, Defendants conceal their identity in their "click-to-call" ads with vague, generic headlines that could apply to any personal injury attorney, including Sibrian. Second, personal injury victims are not seeking legal services as part of their

job, and—as Defendants' own advertisements state—they do not pay any cost. *See, e.g.*, Ex. 29 at 1 ("Nothing Out Of Pocket"). This factor also weighs heavily in Sibrian's favor.

> **B.** **Defendants do not credibly dispute that irreparable harm exists.**

Defendants do not challenge the 2020 Lanham Act amendment, which codified "a rebuttable presumption of irreparable harm … upon a finding of likelihood of success on the merits." 15 U.S.C. § 1116(a). *See also Whirlpool Corp. v. Shenzhen Sanlida Elec. Tech. Co., Ltd.*, 80 F.4th 536, 546 (5th Cir. 2023), *cert denied sub nom. Shenzen Sanlida Elec. Tech. Co., Ltd. v. Whirlpool Corp.*, 144 S. Ct. 807 (2024) ("Under the Lanham Act, a plaintiff seeking a preliminary injunction against infringement 'shall be entitled to a rebuttal presumption of irreparable harm … upon a finding of likelihood of success on the merits.'"). As set forth in Sibrian's opening brief, and above, the factors clearly prove that Sibrian is likely to succeed on the merits of her claim. Thus, the presumption applies.

> *1)* *The alleged "delay" does not rebut the presumption of irreparable harm.*

Lacking any credible argument that its conduct has caused irreparable harm, Defendants argue primarily that Sibrian waited too long to bring her claims. But "[a] defendant who intentionally infringes a trademark with the bad faith intent to capitalize on the markholder's good will lacks the clean hands necessary to assert the equitable defense." *Bd. of Supervisors for Louisiana State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 490 (5th Cir. 2008). *See also Solofill, LLC v. Rivera*, 2017 WL 514589, at *4 (S.D. Tex. Feb. 8, 2017) (finding that "a court may find irreparable harm and enjoin a defendant even after a delay . . . if there is a showing of bad faith on the part of the defendant") (citing *Smack Apparel*, 550 F.3d at 490).

The Motion is amply supported with evidence that Defendants' scheme is conducted with the bad faith intent to capitalize on Sibrian's name and goodwill:

- The entire purpose of Defendants' QM Injury campaign is to capitalize on other personal injury lawyers' names and goodwill to cut them in line (Mot. at 5-6 n.2 (citing Ex. 7, 30, and 35 (Requests No. 9, 11, and 16)));

- Deliberate use of vague generalities in their "click-to-call" advertisements placed in response to searches for the Sibrian Marks (Ex. 8; Ex. 29);

- Bidding enough to place Defendants' "click-to-call" ads above Sibrian's own website;

- Training employees to answer calls in a way that disguises their affiliation, referring only to an "intake" or "admissions department" (Ex. 3, Ex. 34);

- Teaching employees to dodge direct questions about whether or not they are affiliated with Sibrian (Ex. 31; Ex. 34);

- Defendants continue this conduct despite being sued on multiple occasions and despite having been presented with numerous instances of actual confusion (Ex. 1 (Interrog. No. 10); Ex. 45; Ex. 47); and

- Defendants continue to place their misleading ads, knowing full well that people will call them looking for other attorneys, and that they may still be able to land them as a referral (Ex. 1; Ex. A-1 to Defs. Resp.).

At the end of the day, Defendants apparently just view all of this as "the cost of doing business," because confusion was so well "known" within the company that no one bothered to report it. Ex. 45; Ex. 47. This bad faith precludes Defendants' assertion of delay in the first instance.

> 2) *Even if the Court considers delay, it is not undue.*

When determining the length of delay, courts consider when the plaintiff became aware of significant evidence of actual confusion. *See Scrum All., Inc. v. Scrum, Inc.*, No. 4:20-CV-00227, 2020 WL 4016110, at *16 (E.D. Tex. July 16, 2020) (calculating delay based on when "examples of *actual* consumer confusion came to the Plaintiff's attention" during discovery after the suit was filed). Sibrian filed her motion less than a month after receiving concrete evidence of actual confusion. Ex. 36. That is not undue delay.

It is true that Defendants were bidding on the Sibrian Marks as early as 2020. It is also irrelevant. The relevant inquiry is when Sibrian *discovered the unlawful conduct*, not when it began. To use Defendants' own evidence, from October 2023 (Ex. C to Resp. at 1):

> Our client recently became aware of your use of her name and trademarks as search term keywords to generate click-to-call advertisements for your call centers, where callers are engaged in misleading or deceptive communications and ultimately directed to other law firms. A printout showing such an ad is enclosed as **Exhibit B**. These advertisements falsely suggest that your

On top of that, throughout most of 2023, Defendants ███████████████████████ ████████████████. It was not until ██████████████████████ ████████████████████████████████████████ and connected the dots with the misleading and deceptive advertisements, leading to the demand letter in October 2023. Ex. C to Resp. at 1. This "escalating nature" of Defendants infringement negates any effects of delay on the presumption of irreparable harm. *See Vans, Inc. v. Walmart, Inc.*, No. 8:21-CV-01876-DOC-KES, 2022 WL 1601530, at *13 (C.D. Cal. Mar. 31, 2022). Eventually, after haggling with Defendants over discovery, Sibrian obtained evidence of actual confusion in July 2024. Sibrian filed her motion for a preliminary injunction in August 2024. There has been no undue delay, and the presumption of irreparable harm remains in place.

### 3) *Defendants' other arguments also fail to rebut the presumption.*

Defendants argue that there can be no irreparable harm because they "did not convert any of [the Sibrian-seeking] callers into leads." Resp. at 11. The citation for that statement, however, does not actually say that none of the callers were converted to leads. Rather, it says "Defendants were **unable to identify any leads** that were generated in connection with advertisements triggered by the Sibrian Marks." *Id.* at n. 50; Ex. G to Resp. The distinction is crucial. Far from the "no harm no foul" picture Defendants try to paint, the truth is their system is **incapable of identifying leads**

13

**attributable to the Sibrian Marks**, as compared to any of the other ███████████████

████████ that are part of what they refer to as ████████ (Ex. 35 at RFP 9):

████████████████████████████████████████████████████████████████

In other words, Defendants have represented in discovery something quite different than what they suggest to the Court to avoid an injunction—it is not that they generated no leads; it's that they don't know, because their system isn't set up to track it. Defendants (and, consequently, Sibrian) apparently have no way of knowing what turned into leads and what didn't—the type of harm that is, by definition, irreparable.

Defendants' "only ███ times Sibrian's name was mentioned" argument falsely assumes that a caller, if confused, would necessarily mention Sibrian's name. Resp. at 11. There is zero proof to back that up. If anything, a thoroughly confused customer would be less likely to mention Sibrian's name, because they would be operating on the assumption that they had already reached Sibrian's office when they searched for her name and clicked an ad that called directly to an office.

The pre-Lanham Act amendment *Concordia Partners* case does not absolve Defendants. There, when a consumer clicked on the ad it took them to a website, with an explicit disclaimer that confirmed the defendant was no longer affiliated with the plaintiff. *Concordia Partners, LLC v. Pick*, No. 2:14-cv-009, 2015 WL 4065243, at *9 (D. Me. July 2, 2015). In contrast to an explicit disclaimer, Defendants advertisements do not redirect to a website, but a phone call directly to their intake personnel; those personnel do not identify who they work for, and do not answer the phone and disclaim any affiliation with Sibrian (or any other target of QM Injury). Instead, only when pressed, those personnel vaguely state they are an intake department, again refusing to claim

or disclaim any specific affiliation. Ex. 3, Ex. 34.[7] All of this, designed to confuse, is implemented in a way that creates irreparable harm.

Finally, the risk of harm is imminent. Defendants have indicated their intent to continue this misleading, predatory campaign. Ex. 11 ("Quintessa is not willing to suspend its ad campaigns triggered by the Sibrian Marks."). If they won't stop, the Court should stop them.

> 4)    *Sibrian has presented evidence of irreparable harm.*

The hallmark of irreparable harm is when monetary relief is inadequate. *See Deerfield Medical Center v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981) ("An injury is 'irreparable' only if it cannot be undone through monetary remedies."). Monetary relief fails to undue the injury here because, as Defendants admit, "they have no way to track revenues from case leads based on Defendants' purchase or search of the alleged Sibrian Marks," and "it is not possible to retrieve" documents evidencing referrals made based on an advertisement triggered by a search for the Sibrian Marks. Ex. 35 (Req. No. 10, 12, 13). Moreover, Defendants have confirmed their systems are incapable of breaking down "which leads came from which competitive bidding campaigns under the QM Injury umbrella." *Id.* (Req. No. 9). In other words, Sibrian cannot find out what clients were diverted, what their claims were, what their recovery might have been with Sibrian's assistance, or any other information sufficient to fully calculate damages.

## C.    Balance of the Hardships and the Public Interest

Defendants' hardship and public interest arguments boil down to its position that Sibrian has not established a likelihood of success on the merits. *See* Resp. at 23–24. This amounts to no opposition at all—if Sibrian has not established a likelihood of success on the merits, then the Court never reaches the balancing of hardships or public interest in the first instance. Sibrian's

---

[7] By comparison, Sibrian's intake personnel are instructed explicitly to identify themselves as working for the Law Offices of Hilda Sibrian. Ex. 27.

evidence of the balance of hardships and public interest stands uncontested. Thus, with the evidence establishing a likelihood of success on the merits, these factors also weigh in favor of issuing a preliminary injunction.

## III.    CONCLUSION

The eight digits of confusion weigh in Sibrian's favor. There is a presumption of irreparable harm under the Lanham Act. Defendants have offered nothing approaching an overwhelming amount of proof to refute the evidence of actual confusion. And it is undisputed that they intend to continue their scheme of bidding on Sibrian's marks and confusing accident injury victims. For all of those reasons, as explained in Sibrian's opening brief and herein, Sibrian requests that this Court grant the application and enter the requested preliminary injunction.

Dated:  September 5, 2024                    Respectfully submitted,

                                         */s/ Jason S. McManis*

Joseph Y. Ahmad
State Bar No.: 00941100
Federal ID: 11604
Jason S. McManis
State Bar No. 24088032
Federal ID: 3138185
Jordan Warshauer
State Bar No. 24086613
Federal ID: 2994699
Spencer Packard
State Bar No. 24125823
Federal ID: 3737413
joeahmad@azalaw.com
jmcmanis@azalaw.com
jwarshauer@azalaw.com
spackard@azalaw.com
1221 McKinney, Suite 2500
Houston, Texas 77010
Phone: 713.655.1101
Fax: 713.655.0062

**ATTORNEYS FOR PLAINTIFF
THE LAW OFFICES OF HILDA L.
SIBRIAN, P.C. AND HILDA L.
SIBRIAN**

17

## **CERTIFICATE OF CONFERENCE**

I hereby certify that on July 29, 2024, counsel for the parties discussed settlement options and did not reach a resolution. Defendants maintain their opposition to entry of a preliminary injunction and Plaintiffs maintain their belief that an injunction is necessary and proper.

*/s/ Spencer Packard*
Spencer Packard

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 5, 2024, a true and correct copy of the above and foregoing document was served on all counsel of record by email.

*/s/ Spencer Packard*
Spencer Packard